Hillsborough, }
Nov. 1, 1921. }

### JANE MULHALL *v.* NASHUA MANUFACTURING COMPANY.

The failure of an employee to make a claim for compensation within the period
  prescribed by the employers' liability act (Laws 1911, *c.* 163, *s.* 5) is not a
  bar to his recovery unless the employer is prejudiced thereby.

An employer may be estopped to set up the defence of the failure of the employee
  to make a claim for compensation within the period prescribed by the em-
  ployers' liability act (Laws 1911, *c.* 163, *s.* 5).

The provision of Laws 1911, *c.* 163, *s.* 6 (2) that "regard shall be had to any . . .
  benefit which the workman may have received from the employer" is not a
  mandatory requirement that all such benefit shall be accounted for, but
  requires the court to weigh such benefit as evidence; whether justice required
  that any deduction should be made on account of treatment by the employ-
  er's "mill-doctor" was a question for the trial court.

Under *s.* 6 (2) of that act failure to give notice is not a defence in the absence of
  a finding that such failure was prejudicial.

The act being remedial, is to be construed liberally in order to effectuate the
  purpose of its enactment.

In construing a statute the order in which the provisions occur is immaterial,
  if only their meaning and relation are clear.

BILL IN EQUITY, to determine the amount of compensation due
plaintiff under the workmen's compensation act. Trial by the court.
Decree for the plaintiff.

The plaintiff was injured, while in the employ of the defendant,
on August 8, 1919. The accident arose out of and in the course of
the plaintiff's employment, and was not caused in part or in whole
by any serious or wilful misconduct on her part. No formal notice
of the accident was given to the defendant, nor was any claim for
compensation made by the plaintiff until March 20, 1920, when the
following letter was sent to the defendant by plaintiff's counsel:

"March 20, 1920.

Nashua Mfg. Co., Nashua, N. H.

Gentlemen: On Friday, August 8, 1919, Jane Mulhall of 12 Church
Street, Nashua, N. H., was injured in the spool room of your mill.
Your doctors have attended her to date. She is still disabled. Your
Insurance Company up to now has delayed adjustment of the matter.
Wherefore this paper gives you notice that Miss Mulhall claims
compensation for said injury under the act.

Yours truly, Thos. J. Leonard, For Jane Mulhall."

The employer was in no way prejudiced by the want of a notice
of the accident inasmuch as its agents were immediately informed

and the plaintiff was sent to the defendant's infirmary for treatment. The evidence tended to prove that the plaintiff was under the daily observation and treatment of the defendant's mill-doctor for a year after the accident. The court finds that the plaintiff is entitled to compensation for the full term of three hundred weeks from the date of the accident; that the average weekly earnings of the plaintiff when at work on full time during the preceding year was fifteen dollars per week; and that she is, therefore, entitled to compensation in the sum of $2250.

The defendant excepted to the denial of its motion to dismiss the bill because no claim for compensation was made within six months from the occurrence of the accident. The defendant also excepted to the following findings of fact as against the law and the evidence, namely: (1) that the defendant is estopped to set up the defence of the failure of the plaintiff to make a claim for compensation within the statutory period of six months; (2) that the plaintiff is entitled to the sum of $2250 as compensation; (3) that justice does not require that any deduction shall be made on account of the treatment given plaintiff by the mill-doctor. The defendant further excepted to the denial of its motions that the decree in favor of the plaintiff be vacated and the verdict set aside. Transferred from the September term, 1920, of the superior court by *Branch,* J.

*Thomas J. Leonard, Doyle & Doyle* and *Cobleigh & Cobleigh (Mr. Marshall D. Cobleigh* orally), for the plaintiff.

*Lucier & Lucier (Mr. Alvin J. Lucier* orally), for the defendant.

SNOW, J. "No proceedings for compensation under this act shall be maintained unless notice of the accident as hereinafter provided has been given to the employer as soon as practicable after the happening thereof . . . , and unless claim for compensation has been made within six months from the occurrence of the accident, . . . but no want or defect or inaccuracy of a notice shall be a bar to the maintenance of proceedings unless the employer proves that he is prejudiced by such want, defect or inaccuracy. Notice of the accident shall apprise the employer of the claim for compensation under this article, and shall state the name and address of the workman injured, and the date and place of the accident. . . ." Laws 1911, *c.* 163, *s.* 5.

The defendant concedes that the plaintiff is excused for her failure to give it notice of the accident as required by *s.* 5 since the court

has found that it was not prejudiced thereby, but contends that plaintiff's failure to make a claim for compensation within six months from the occurrence of the accident is a bar to her recovery. Defendant's position raises the question whether or not it was the legislative intent thus to distinguish between the requirements as to the giving of notice of an accident on the one hand, and as to the making of a claim for compensation on the other, by making the former excusable and the latter absolute.

In ascertaining the meaning of any statute, the circumstances under which the language is used, the evil to be remedied, the object sought to be attained, and the general policy and theory upon which the legislation proceeds are material to be considered. *Barker* v. *Warren*, 46 N. H. 124, 125; *Hale* v. *Everett*, 53 N. H. 9, 126, 193; *Brimblecom* v. *O'Brien*, 69 N. H. 370; *Stanyan* v. *Peterborough*, 69 N. H. 372, 374; *Opinion of the Justices*, 72 N. H. 605, 607; *State* v. *National Bank*, 75 N. H. 27, 32; *Clough* v. *Railroad*, 77 N. H. 222, 230.

Workmen's compensation acts have been adopted by all the nations of western Europe and by a majority of the American states, including all those that have any considerable industrial development. These statutes have been enacted in response to public sentiments and beliefs, widely prevalent, that the burdens, delays, inadequate relief and unequal operation of the common-law remedies as applied to industrial accidents rendered them unsuited to modern conditions. The evils of the common-law remedies, which were not noticeable in the days of small and scattered shops, few employees and simple tools, became intolerable in the days of crowded factories, equipped with complicated and dangerous machinery. The changes incident to this industrial development had not only largely increased the opportunities for avoidable injury but had multiplied the dangers of inevitable accidents.

"The application of the principles of the common law to suits for personal injuries sustained in hazardous employments resulted in many cases in injustice. . . . It filled the courts with litigation; it became the fruitful source of perjury; it engendered bitterness between employer and employee; it resulted in great economic waste, and it turned out an army of maimed and helpless people as dependents upon the charity of friends or the public. . . . the loss has fallen upon those least able to bear it. . . ." *American Coal Co.* v. *Commissioners*, 128 Md. 564, 574. "The remedy to the . . . workman is uncertain, slow and inadequate; . . . injuries . . . form-

erly occasional have become frequent and inevitable. . . ." *State* v. *Clausen,* 65 Wash. 156.   "The terrible economic waste, the overwhelming temptation to the commission of perjury, and the relatively small proportion of the sums recovered which comes to the injured parties in" common-law actions "condemn them as wholly inadequate to meet the difficulty." *Borgnis* v. *Company,* 147 Wis. 327, 348. The common-law system of dealing with actions by employees against employers for personal injuries is inconsistent with modern industrial conditions, uneconomic, unwise and unfair. *Peet* v. *Mills,* 76 Wash. 437; *American Coal Co.* v. *Commissioners, supra.* "It resulted, it was widely believed, in injustice both to the employer who was sometimes the victim of unjust or excessive claims and to the employee who had to bear the necessary risks of the business and who was often delayed in the enforcement of a just claim and burdened with the expenses of a protracted litigation. The danger was ever present that an employee or his family might become dependent upon public support because no relief could be given for injuries to employees or for death resulting from such injuries. This old and unsatisfactory system of negligence law was the evil to which the legislature addressed itself when it enacted the Compensation Act." *Shanahan* v. *Company,* 219 N. Y. 469.

Beginning in Germany in 1884, in England in 1897, and in the American states in 1910, legislative bodies have attempted to solve this distinctly modern problem by the substitution of the compensation principle in the place of liability for negligence. The theory of the legislation is that the risk of injury, not due to the wilful misconduct of the workman, should be borne in the first instance by the employer and ultimately by the consumer of the product of the industry. This is the practical operation of the statutes, whether optional or compulsory, since the employer may protect himself by adding the premium paid for insurance, and the cost of administering the law, to the over-head charges of his business as a basis for determining the cost and the price of his product, thus transferring the burden to the consumer. *Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686; *Adams* v. *Company,* 63 Okla. 52; *Chandler* v. *Indus. Com'n,* 55 Utah 213; *Deaver* v. *Napier,* 139 Minn. 219; *State* v. *Clausen,* 65 Wash. 195.

"The compensation provided for in the act is in no sense to be considered as damages. . . . The right to compensation arises out of the relation existing between employer and employé, . . . the costs and expenses of conducting the business . . . including com-

pensation for injuries to employés . . . must be taxed to the business. The theory of the Compensation Act is that the whole cost and expense of conducting the business . . . is added to the cost of the articles that are produced and sold, and hence, in the long run, such costs and expenses are borne by the public." *Chandler* v. *Indus. Com'n, supra; Fassig* v. *State,* 95 Ohio St. 232. "It was the intention of this act to make the business bear the burden of incidental and accidental injuries without regard to the question of negligence, either on the part of the employer or the employee. In the long run the public, and not the persons immediately involved, except to the extent that they are members of society at large, pay the bills." *Wick* v. *Gunn,* (Okla.) 169 Pac. Rep. 1087, 1089. "The basic principle of the act is that the cost of injuries incidental to modern industry should be treated as a part of the cost of production. The act was framed with that end in view." *Duart* v. *Simmons,* 231 Mass. 313, 319; *Gagnon's Case,* 228 Mass. 334. "The general purpose of this Act undoubtedly is to transfer the burdens resulting from industrial accidents, regardless of who may be at fault, from the individual to the industry and finally distribute it upon society as a whole, by compelling the industry, in which the accident occurs, through the employer, to contribute to the support of those who were actually and lawfully dependent upon the deceased for their sustenance during his lifetime." *Scott's Case,* 117 Me. 436, 444. The intent of the workmen's compensation act was "to afford its protection to all . . . employers and employees who might voluntarily choose to make its provision for compensation for injury a part of their contracts of employment. It assumed that accident is incident to employment, and purposed to charge its cost, in the case of every injury not caused by the wilful and serious misconduct or intoxication of the injured employee to the industry in which it occurred . . ." and to "include it among the items charged to operation." *Kennerson* v. *Company,* 89 Conn. 367, 375. "Prior to the enactment of the Workmen's Compensation Act, the consequential and financial losses to workmen engaged in industrial activities were borne by the workmen themselves, by their dependents, or by the state at large. The Legislature by the passage of this act indicated its belief that this loss should be borne by the industries causing them, or more accurately by the consumers of the products of the industry causing the loss." *In re Duncan,* (Ind.) 127 N. E. Rep. 289, 291. The statutes are products of the "social and economic idea" that the "burden of repairing the efficiency of the human machines" like the "depreci-

ation and destruction" of other machinery should be borne by the consumer through the employer. *Lewis and Clark County* v. *Industrial Accident Board,* 52 Mont. 6. The purpose is to require "every consumer of any product of human industry, as directly as practicable, to pay his ratable proportion" of the cost including the repair of the efficiency of the human factor, which is as legitimately an element of "the fair money cost" as the repair of machinery or cost of materials. *Milwaukee* v. *Miller,* 154 Wis. 652. All of these statutes "are based upon the . . . principle that the proper regulation of such hazardous occupations and the payment of just compensation for injuries received therein is a matter of public concern" since otherwise the injured employee and his dependents may become public charges. *Adams* v. *Company, supra.*

These declarations of legislative purpose underlying this class of legislation, so widely and uniformly expressed, and so repeatedly reiterated in practically every jurisdiction where there has been occasion for judicial expression, represent no passing wave of popular emotion, but reflect a deep-seated public conviction that the new conditions require a new system of compensation for industrial accidents which will equalize and distribute the burdens and distress incident thereto more justly and with greater speed, certainty and economy.

While the statutes that have been enacted in response to this conviction are radical in that they create a liability regardless of fault, and in that they abolish or materially modify the long established doctrines of contributory negligence, of assumption of risk and of negligence of a fellow-servant, they are highly remedial in that they offer to the employee as a substitute for the common-law action, a certain and sure remedy applicable to all cases of injury not due to his wilful misconduct. Nor are they burdensome to the employer since his present liability is limited to a fractional part of the loss of earnings of the employee for a limited period and the ultimate burden is transferred to those who enjoy the product of the industry. The statute being remedial is to be construed liberally in order to "fully and adequately effectuate the purpose of its enactment." *Barber* v. *Company,* 79 N. H. 311, 312; *Lizotte* v. *Company,* 78 N. H. 354, 357; *Scott's Case, supra; Sullivan's Case,* 218 Mass. 141; *Hotel Bond Co.'s Appeal,* 89 Conn. 143; *Shanahan* v. *Company,* 219 N. Y. 469; *Combination Rubber Mfg. Co.* v. *Court of Common Pleas,* (N. J.) 115 Atl. Rep. 138, 139; *State* v. *District Court,* 128 Minn. 43.

"Neither employer nor workman, unless he so choose, comes within the Act. When both so elect, the Act becomes a part of the contract of employment." *Hotel Bond Co.'s Appeal, supra.* The legislature offered incentives to both parties to accept the provisions of the act. *Sullivan Machine Co.* v. *Stowell, ante,* 158; *Boody* v. *Company,* 77 N. H. 208, 209. "It was not made compulsory in its application, but inducements were held out to facilitate its voluntary acceptance by both employers and employees. It is manifest from the tenor of the whole act that its general adoption and use . . . by all who may embrace its privileges is the legislative desire and aim in enacting it. The act is to be interpreted in the light of its purpose and, so far as reasonably may be, to promote the accomplishment of its beneficent design." *Young* v. *Duncan,* 218 Mass. 346, 349; *Cox's Case,* 225 Mass. 220. An interpretation of the statute which would narrow the opportunity of either party to avail himself of the benefits of its provisions would be inconsistent with the spirit and purpose of the legislation.

One of the more important aims of this legislation is to secure to the injured workman, or to his dependents, compensation by direct payments "under certain fixed rules without a law-suit and without friction." *Borgnis* v. *Company, supra,* 337; *Brenner* v. *Brenner,* 127 Md. 193; *American Coal Co.* v. *Commissioners, supra.* This is to be accomplished by a "procedure at once simple and inexpensive." *Kennerson* v. *Company, supra.* Certainty of relief to all injured employees not guilty of wilful misconduct is assured in the place of uncertain relief to a limited number. *Hotel Bond Co.'s Appeal, supra.* With these objects in mind, it cannot be presumed that the legislature intended to set up a rigid limitation which would defeat the purpose of the act in respect to injured workmen and their dependents who, from their unfamiliarity with business affairs and legal requirements, fail to make a claim within a limited time where the employer is in no way prejudiced by such failure. Such a result would be in the teeth of the legislative design to liquidate through the employer the statutory compensation for such a claim and distribute it as a part of the cost of production. To the extent that claims for compensation, authorized by the statute, fail to be presented, the underlying purpose of the statute fails. The object of the limitations, with respect to notice of the accident and the making of a claim for compensation, was not to create technical defences to otherwise valid claims. The intention of the legislature was to cut off fraudulent claims and to protect the employer if he

has been prejudiced by the employee's negligence in seasonably presenting his claim.

A "construction which would make the prohibition of proceedings to secure compensation . . . absolute and unyielding would lead to a harsh and rigid rule which might easily work injustice." Accordingly, in *Schmidt* v. *Company*, 90 Conn. 217, 222, recourse was had to the terms of the parent act and to the general policy of the framers of the law in interpreting the language used. New Hampshire was one of the first (1911) of the American states to adopt a valid workmen's compensation act. Some of its features are unmistakably moulded after the British act of 1906. (6 Ed. VII, *c.* 58). This is particularly true as to the clause providing for notice of the accident and for the making of a claim for compensation. The variance in these features of the two acts consists principally in the conditions under which the employee may be excused from the otherwise apparently strict requirements of the statute. Except as to the burden of proof, the New Hampshire act in substance follows the British act in excusing the employee in case of "the want of or any defect or inaccuracy in" the notice of the accident if it be found that the employer would not be prejudiced thereby. The British act, however, went further and excused the employee, without regard to the resulting prejudice to the employer, if "such want, defect, or inaccuracy was occasioned by mistake, absence from the United Kingdom, or other reasonable cause." By separate clause it likewise excused the employee, without regard to the resulting prejudice to the employer, for failure to make a claim within the statutory requirement "if it is found that the failure was occasioned by mistake, absence from the . . . United Kingdom, or other reasonable cause." The British act thus clothed the court with broad and elastic powers to protect the employee against his oversight both with respect to notice of the accident and as to the making of claim for compensation. It was the unmistakable policy of the parent act to deal liberally with the employee unused to business and ignorant of his legal rights and duties. It relieved him from technical requirements for any reasonable cause when justice in the particular case might so require.

An examination of the provisions of the New Hampshire act discloses that the legislature did not intend to depart so far from the general policy of the parent act as to make the failure of the employee to make a claim for compensation within the statutory period an absolute bar to recovery. It is evident from the language used that

the intent was to make the excuse for the employee's fault, whether it consisted in omission seasonably to give notice of the accident or in failure to make a claim for compensation within the statutory limitations, or both, depend alike solely upon the fact whether the employer had been prejudiced thereby. The objectionable clause which included "mistake . . . absence . . . or other reasonable cause" among the grounds of excusable failure was omitted and, instead thereof, the legislature sought to extend the excuse of "want or defect or inaccuracy of a notice" of the accident when the employer was not prejudiced thereby to a like "want or defect or inaccuracy" in the making of a claim for compensation. This was accomplished by providing that "notice of the accident shall apprise the employer of the claim for compensation under this article," thus making the claim for compensation an essential part of the notice of the accident and subject to all the provisions with respect thereto. In his efforts to consolidate the provisions with respect to notice of the accident and the making of a claim for compensation, and otherwise to abbreviate this section of the statute, the legislative draftsman lost something of the logical order of the ideas expressed, but his purpose is none the less evident. If, in the first sentence, the words "notice of the accident" had been defined to include the apprisal of the employer of the claim for compensation, then clearly the language "no want or defect or inaccuracy of a notice shall be a bar" etc. would apply to that part of the notice relating to the making of a claim equally well and as certainly as to all other parts of it. There is nothing in the language or the subject-matter which tends to the conclusion that the legislature intended that the word "notice" wherever it appeared should be given any other than the meaning later defined in the same section. The order in which the provisions occur is immaterial if only their meaning and relation are clear. *Barker* v. *Warren, supra; Stanyan* v. *Peterborough, supra,* 373; *State* v. *Railroad,* 70 N. H. 421, 429. It is as though the section read: No proceeding for compensation under this act shall be maintained unless notice of the accident, which shall apprise the employer of the claim for compensation under this article and shall state the name and address of the workman injured and the date and place of the accident, has been given the employer as soon as practicable, and not more than six months from the occurrence thereof but no want or defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings unless the employer proves that he is prejudiced by such want,

defect or inaccuracy. A sufficient notice of the accident is a sufficient claim for compensation.

The language of *s.* 4 and *s.* 6 corroborates this interpretation. In neither of these sections is any mention made of the making of a claim for compensation. But *s.* 4 makes the "giving the notice hereinafter prescribed" a bar to the maintenance of an action at common law, or under any other statute, while *s.* 6 (2) sets up "the giving of the notice required by section five of this act" as a prerequisite to the payment of compensation. The legislature would not have failed to set up the making of claim for compensation as a like "bar" and a like prerequisite in *s.* 4 and *s.* 6, respectively, had it intended in *s.* 5 to provide for such making of a claim by an act separate and distinct from the giving of notice of the accident. To the objection of counsel that, unless the limitation is a condition precedent, the claim for compensation may be made at any time within six years, it is sufficient to say that if the employer is not prejudiced by the delay, he is not injured by it, and upon this issue the statute expressly gives him the right to be heard and to the dispassionate judgment of the trial court.

"As these statutes [workmen's compensation acts] constitute an entirely new departure in the law of employers' liability, it is not surprising that there are numerous conflicting decisions, many of which are due to the inconsistencies and crudities of the acts themselves, and many others are due to the varying views taken by the different judges before whom the questions arose." Glass, Work. Compens'n, 27, 28. So far as the authorities cited by the defendant hold that these acts are to be strictly construed because they are in derogation of the common law, or because of other rules of construction peculiar to other jurisdictions, they are not applicable in this state. Some legislatures have anticipated this difficulty and engrafted into their compensation acts a provision that "the rule that statutes in derogation of the common law are to be strictly construed shall have no application to this act; but this act shall be so interpreted and construed as to effectuate its general purpose." Maryland, Act 1914, *c.* 800, *s.* 60. Such a provision is unnecessary in a jurisdiction where common-law rules and practice no longer prevail when and to the extent that they are no longer compatible with our circumstances or applicable to changed conditions. *Cole* v. *Company*, 54 N. H. 242, 286; *Harris* v. *Webster*, 58 N. H. 481, 484; *Brooks* v. *Howison*, 63 N. H. 382, 386, 387; *Ricker's Petition*, 66 N. H. 207, 210; *Opinion of the Justices*, 66 N. H. 629, 651. No

such sanctity attaches to the common law of this state as to require a less liberal construction of an enactment in its derogation, if such enactment be made pursuant to principles which have come to be as universally recognized, and which are equally as essential to the administration of justice, as are common-law principles. Legislative enactments embodying principles so generally adopted and so clearly supported by unmistakable public sentiment should have no less liberal construction because they are the outgrowth of modern conditions incident to industrial development than has been accorded to laws made pursuant to principles similarly recognized and supported under conditions existing in 1784. "The changed social, economic, and governmental conditions and ideals of the time, as well as the problems which the changes have produced, must . . . logically enter into the consideration, and become influential factors in the settlement of problems of construction and interpretation." *Borgnis* v. *Company,* 147 Wis. 327, 349. "The common rule as to construing legislation in derogation of the common law strictly against a purpose to change it has little or no application to the efforts to create a new system for dealing with personal injuries to employees. History leaves no fair room for doubt as to the purpose being to approach the ideal of affording compensation for loss in substantially all cases of accidental injury to employees in the course of their employment. Therefore the legislative language, where open to construction, should be read liberally in favor of that purpose." *Sadowski* v. *Company,* 157 Wis. 443, 449.

It has been found that the defendant was in no way prejudiced by the want of notice of the accident. There was evidence on which this finding could be made, using the word "notice" in the sense in which it is herein interpreted. If so used, or if the defendant failed to sustain the burden of proving prejudice which was placed upon him by s. 5, the award will stand as if the statutory notice had been seasonably given. But as the case appears to have been tried on the defendant's theory that the statute required the making of a claim distinct from the giving of the notice of the accident, and as it does not, therefore, conclusively appear that the court in its finding used the word "notice" as herein interpreted, and as upon further consideration it may be found that the defendant was prejudiced by plaintiff's failure seasonably to make a claim for compensation, it becomes important to consider whether the further finding "that the defendant is estopped to set up as a defense the failure of the plaintiff to make a claim for compensation within

the statutory period of six months" can be sustained. The defendant contends that this finding is not supported by the law or the evidence.

Is this finding supported by the law? While the workmen's compensation act may be said to have been enacted for the benefit of the employees, the provision limiting the time within which a claim can be made under it was designed for the benefit of the employer. Conditions in contracts of insurance which limit the right of action by the insured, being for the benefit of the insurer, may be waived by the latter. *Perry* v. *Insurance Co.*, 67 N. H. 291, 296; *Davis* v. *Insurance Co.*, 73 N. H. 425; *Maynard* v. *Insurance Co.*, 76 N. H. 275, 276, 277; *Kelsea* v. *Insurance Co.*, 78 N. H. 422, 425. So statutory provisions enacted for the benefit of individuals may be so far waived by those for whose benefit they were enacted that they are estopped to insist upon their protection. *Hanover* v. *Weare*, 2 N. H. 131, 132; *Patrick* v. *Insurance Co.*, 43 N. H. 621, 623; *Lyman* v. *Littleton*, 50 N. H. 42; *Tasker* v. *Insurance Co.*, 58 N. H. 469, 470; *Levi* v. *Insurance Co.*, 75 N. H. 551, 552, 553; *Flynn* v. *Insurance Co.*, 77 N. H. 431; *Kelsea* v. *Insurance Co.*, *supra*.

Does the evidence support the finding of estoppel? The defendant held a policy of insurance with the American Mutual Liability Insurance Company by the terms of which the insurance company contracted "to pay promptly to any person entitled thereto, under the Workmen's Compensation Law, and in the manner therein provided, . . . any sum due . . . such person because of the obligation for compensation . . . imposed upon . . . this employer" by the law. The policy, in addition to a contract of indemnity, in terms, provides that these obligations are "the direct obligations and promises of the Company [insurer] to any injured employee covered hereby . . . and to each such employee . . . the Company is hereby made directly and primarily liable. . . . This contract is made for the benefit of such employees . . . and is enforceable against the Company, by any such employee . . . in his name or in his behalf, at any time and in any manner permitted by law, whether claims or proceedings are brought against the Company alone or jointly with this Employer." The company undertakes "to serve this Employer . . . upon notice of such injuries by investigation thereof and by settlement of any resulting claims in accordance with law" and "to defend in the name and on behalf of this Employer any suits or other proceedings . . . instituted against him on account of such injuries."

The acceptance by the defendant of the contract with the insurance

company to serve it in the investigation of injuries to employees, the settlement of resulting claims, and the defence of proceedings for the recovery of compensation under this statute constituted the insurance company the agent of the defendant to thus investigate, settle, or defend claims arising within the terms of the contract. The sweeping character of the authority of the insurance company under such agency is emphasized by the direct and primary liability assumed by it. The insurance company was clothed with authority to do, through its agents, whatever the defendant could have done by way of such investigation, settlement within the limits of its policy, and defence of plaintiff's claim.

The evidence tends to show that, pursuant to the terms of its contract with the defendant, the insurance company, through its agent, West, assumed the charge and control of the investigation and preparation for defence of the defendant's liability, if any, to the plaintiff; that under the supervision and direction of the agent, one of his men whom he styles an "adjuster or investigator" was employed on the case and reported to West, who knew what was going on; that the adjuster about eight weeks after the accident called upon and took the statement of the plaintiff, and then told her to wait until she saw how she got along, that "he didn't want any lawyer to be brought in, and they would pay her for six years"; that the company would be fair with her and put it at eight dollars per week; that not hearing from the adjuster for three or four months from the date of the accident, plaintiff employed counsel, who arranged with the agent by telephone for a conference; that, the agent failing to keep the appointment, plaintiff's attorney, on a day or two before the expiration of the six months from the accident, again called the agent on the telephone, saying "it was about time we filed a notice with the Nashua Manufacturing Company of the injury" to which the agent replied, "You don't need to file that notice. We will waive the filing of the notice with the company. We know all about the injury"; that plaintiff's attorney told the agent "we were going to claim compensation"; that in the conversation, plaintiff's attorney had in mind the notice of claim for compensation required by the statute to be given within six months after the injury, and the agent knew of this statutory requirement; that relying on the assurance of the agent, the plaintiff did not seasonably file such statutory notice as she otherwise would have done; that the letter of March 20, 1920, was sent to the defendant, by plaintiff's counsel in line with his talk with the agent.

Whatever may have been the real intention of the agent, his conduct was calculated to leave the impression in the mind of plaintiff's attorney that he was excused from making a formal claim for compensation since there was no other act required by the statute to which a six months' limitation applied. But defendant claims that West was not such an agent as to waive the rights of the defendant or his own company. West testified that he was the agent of the insurance company; that he investigates claims, settles some that are within his authority, and submits others to his superiors. The limits of his authority do not appear in the evidence. He admitted that the investigation of plaintiff's accident was made under his supervision by his adjuster or investigator; that he told plaintiff's attorney that there was no need of filing a notice; that he knew all about it. He does not claim to have exceeded his authority in this. Whenever the employer would be prejudiced by its want, notice of the accident was, under defendant's interpretation of the statute, as clearly prerequisite to the maintenance of proceedings as was the making of a claim for compensation. It would be rather a finely drawn limitation of authority which permitted the agent to excuse the former and forbade him to waive the latter. The issue does not, however, depend upon any nice distinctions as to the precise limitations of the authority of the agent but rather upon the question whether the agent was acting within the apparent scope of his authority. It cannot be said as a matter of law that a reasonably prudent man would not, under the circumstances, have accepted, and acted upon, the agent's assurance. *Backman* v. *Charlestown*, 42 N. H. 125, 132; *Deming* v. *Railroad*, 48 N. H. 455, 472; *Daylight Burner Co.* v. *Odlin*, 51 N. H. 56, 60; *Flanders* v. *Putney*, 58 N. H. 358; *Flint* v. *Railroad*, 73 N. H. 141, 147; *Atto* v. *Saunders*, 77 N. H. 527, 528, 529.

What is true of the precluding effect of West's conduct could also be found to be true as to the earlier conduct of his adjuster. There is no evidence that subsequent to the day of the accident, the defendant by its officers or employees had any communication with the plaintiff or her attorney except in the visits of its mill-doctor. It could be found from this, together with the evidence of the acts and statements of the representative of the insurance company, that the company was performing its contractual duty to serve the insured in the investigation and settlement of plaintiff's claim. The insurance company permitted its adjuster to call upon the plaintiff, to require her to sign a statement, to dissuade her from

employing an attorney, to discuss with her the amount of her wages as a basis for computing the compensation due her under the statute, and to give her assurance that the company would be fair and pay her a sum in excess of the compensation provided by statute. This was conduct calculated to induce the plaintiff to forbear the employment of counsel and to defer giving the statutory notice apprising the employer of her claim for compensation. It could be found upon the evidence that the plaintiff relied and acted upon the conduct and representation of the adjuster and that in so doing she acted as a reasonable person. It is not a question whether the agent or his adjuster had specific authority to waive a statutory provision but rather a question whether the insurance company placed these men in positions of apparent authority to deal with the plaintiff and her attorney in the matter, and whether, upon their representations and conduct, the plaintiff was reasonably led to believe that the statutory requirements were waived. The plaintiff and her attorney had a right to assume that these agents were clothed with authority to employ the usual and ordinary means of accomplishing that for which the agency was created. *Bohanan* v. *Railroad,* 70 N. H. 526, 528; *Goodale* v. *Wheeler,* 11 N. H. 424, 429. The suspension of technical requirements is, not infrequently, a means employed to prolong negotiations in order to secure amicable settlements.

The plaintiff relying and acting upon the assurances of defendant's agent, having deferred the presentation of her claim for compensation, the defendant is estopped to set up such limitation as a defence. *Hale* v. *Insurance Co.,* 32 N. H. 295, 300; *Horn* v. *Cole,* 51 N. H. 287, 291, 292; *Appleton* v. *Insurance Co.,* 59 N. H. 541, 545; *Carpenter* v. *Britton,* 61 N. H. 430, 431; *Dunn* v. *Insurance Co.,* 69 N. H. 224, 226; *Lally* v. *Insurance Co.,* 75 N. H. 188, 189; *Clark* v. *Parsons,* 69 N. H. 147, 157; *Ball* v. *Association,* 64 N. H. 291, 293; *Barney* v. *Keniston,* 58 N. H. 168, 169; *Stevens* v. *Dennett,* 51 N. H. 324, 333.

The statute provides that "in fixing the amount of the weekly payment, regard shall be had to any payment, allowance or benefit which the workman may have received from the employer during the period of his incapacity." *s.* 6 (2). The plaintiff testified that she received emergency treatment from the mill-doctor and nurse on the day of the accident and that the mill-doctor, who was employed by defendant, attended her every day for a year from the date of the accident; that on his advice she had x-ray pictures taken and consulted and submitted to the treatment of expert physicians

who applied plaster casts and other supports. It does not appear that the defendant paid for any of the expenses incident to this treatment outside of the attendance of the mill-doctor. The ordinary charge of physicians for house visits was two dollars a visit until April 13, 1920, when it was increased to three dollars. The defendant excepts to the finding that "justice does not require that any deduction shall be made on account of the treatment given her by the mill-doctor" and to the refusal of the court to find that the plaintiff "must account for 300 visits at three dollars a visit of the mill-doctor." The defendant contends that the provision "regard shall be had" is mandatory and not discretionary. It is a sufficient answer to this position to say that the provision, "In fixing the amount of the weekly payment, regard shall be had to any . . . benefit . . . received from the employer," is not equivalent to saying that any benefit received from the employer shall be deducted from the weekly payments. The one requires the court to weigh the benefit as evidence, while the other would require an accounting for the benefit. Had the latter been the purpose of the legislature, it is reasonable to suppose that more apt words would have been used to express the intention.

Counsel for defendant conceded in argument that the mill-doctor was employed by the defendant at a stipulated annual salary and that no additional payments were made to him on account of his attendance upon the plaintiff. Section 7, c. 163, Laws 1911, provides that "any workman entitled to receive weekly payments under this act is required, if requested by the employer, to submit himself for examination by a duly qualified medical practitioner or surgeon provided and paid for by the employer, at a time and place reasonably convenient for the workman, within two weeks after the injury, and thereafter at intervals not oftener than once in a week. If the workman refuses to submit to such examination, or obstructs the same, his right to weekly payments shall be suspended until such examination has taken place, and no compensation shall be payable during or for account of such period." It does not appear that the plaintiff requested the attendance of the mill-doctor. So far as such treatment was a benefit to the plaintiff, it would seem that it was one which the plaintiff received in common with all employees of the defendant as a part of the facilities which the defendant voluntarily furnished. There was no evidence that employees were charged for such treatment. It does not appear how far the attendance of the mill-doctor was for the benefit of the plaintiff

under *s.* 7. Whether due regard for such benefit as the plaintiff received required that it should be allowed for in fixing the amount of the weekly payments, and if so, to what extent, was a question of fact for the trial court.

The defendant excepts to the finding that the plaintiff is entitled to $2250 as compensation. Section 6 (2) provides that "no such payment shall be due or payable for any time prior to the giving of the notice required by section five of this act." But notice is material under *s.* 6 (2) only in the cases where it is "required by section five." As *s.* 5 does not require a notice unless the employer proves that he was prejudiced by the want of it, this provision of *s.* 6 (2) has no application when prejudice is not shown. If the court fails to find that the defendant was prejudiced by the want of notice as herein interpreted there will be no occasion to apply or consider the limitation in *s.* 6 (2). If the court finds that the want of notice in the statutory sense is prejudicial to the defendant then the question of estoppel and when it took effect becomes material. In the event of such finding of prejudice compensation can be computed only from the time when notice was given or what is here equivalent, namely, the date when the estoppel became effective.

The question whether, if the estoppel set up depended upon facts occurring more than six months after the accident, the statutory bar to a proceeding provided in *s.* 5 could be avoided is not presented in this case and is not considered.

As the case stands, the burden of establishing that the defendant was not prejudiced by the plaintiff's failure to give notice of the accident or to claim compensation does not appear to have been sustained and the exceptions might be overruled without further order. But, in view of the uncertainty as to the meaning of the finding, justice may require further hearing as to the fact. The order is therefore

*Case discharged.*

YOUNG, J., dissented: the others concurred.