JOHN D. MOORE, RESPONDENT, v. HENRY S. DEREES, APPELLANT.

Submitted March 23, 1922—Decided June 23, 1922.

1. The promise of an employer to a physician to pay for an operation already performed by him upon an employe, and for subsequent attendance, is a promise to pay the debt of another and within the statute of frauds.

2. A special contract of an employer with a third party in respect to injuries received by his employe is out of harmony with the provisions of the Workmen's Compensation act, and the third party cannot recover in an action based on such special contract, but must proceed in the method provided by the statute to recover for services performed by him as a physician.

On appeal from the District Court of Newark.

Before Justices SWAYZE, BLACK and KATZENBACH.

For the respondent, *James R. Stewart.*

For the appellant, *Charles Jones.*

The opinion of the court was delivered by

SWAYZE J. The plaintiff is a physician. One Numuz, a workman in the employ of the defendant, was injured in the

course of his employment and sent for the plaintiff to attend him. The plaintiff did so and found Numuz suffering from a very bad injury to the eye which needed an immediate operation. He took charge of it, and with the patient's consent took him to the Newark Eye and Ear Infirmary, and performed the necessary operation. This was in the afternoon; the plaintiff did not see the defendant until afterward and first talked with him over the telephone the same evening. The defendant then told him to give Numuz every possible care and attention, private hospital care, a private nurse, and to spare nothing. The plaintiff said, "this is expensive," to which the defendant answered, "that don't matter, but give him the best of care, every care and consideration, spare nothing, give him private nurses, put him in a private room, and absolutely give him the best of care and attention and get consultations if you want to." The plaintiff did not, however, secure a private room and a private nurse because the infirmary did not have the available room and the only available bed was in the ward with other patients. There is no proof of consultation. Numuz was in bed for several days when he commenced to improve and the plaintiff gave orders that he could be out of bed. The eye and ear infirmary was short of help and Numuz was asked to carry in a tray of food to some other patients who were not able to get up. To this he objected and the defendant also objected, saying that he was a private patient, that he did not want him to wait on other patients. Numuz and Derees were both dissatisfied. The patient was taken to the Mountainside hospital, at Montclair, about two weeks after the accident. This suit is brought to recover the plaintiff's bill for services. His charge was $100 for the operation, $84 for twenty-eight calls and $14 for two office calls, making a total of $198. Judgment was rendered for the full amount with interest.

The trial judge found that the defendant led the doctor to rely on him for payment of the bill for doctoring, in which he must have meant to include the operation. He

also found that the weight of the evidence on the disputed points, as to the attitude of the defendant, established the liability for the bill. What the disputed points were does not appear. The appellant does not dispute the amount of the bill but relies upon the fact that it was a proper case for proceeding under the Workmen's Compensation act, so as to preserve the defendant's rights to recover indemnity from his insurance carrier.

The operation for which the charge is more than half the bill was performed before the defendant knew anything about the accident and at the request of the injured workman. There is nothing to take this case out of the ordinary rule that a debt will be implied from the rendering of services on request, and there is nothing to negative the indebtedness of Numuz to the doctor. Nor is there any question that Numuz became indebted to the doctor for the subsequent attendance, since the doctor says himself that he took charge of the case. There is no evidence that he acted on the defendant's request to provide private hospital care and a private nurse. He seems to have acted as any reputable doctor would have acted in the performance of his duty to a poor patient who might be assumed to be willing to do light work to help pay his hospital expenses. If the situation in life of Numuz and of the defendant had been exchanged no one would have thought of collecting the bill of the defendant, although there is nothing to show pecuniary inability on Numuz part. We naturally assume without basis therefor that an employe who was injured chopping wood is a man of no means or very moderate means and that a surgeon's bill for a serious operation to the eye might be a hard bill to pay.

The legislature has provided for the liability of the employer by a method of its own, with which we shall deal later. The promise of Derees to pay the doctor, so far as the $100 item is concerned, is the promise to pay the debt of another. The case is something like *Fitzgerald-Spear Co.* v. *Kelly,* 81 *N. J. L.* 6, with this vital difference that Numuz' debt

for the operation already performed and the subsequent debt for services already contracted for was without even the knowledge of Derees. Derees' object was not to secure ordinary attendance for the patient but to secure extraordinary attendance. So far as ordinary attendance was concerned, the doctor's obligation to render it was under his agreement with the defendant without consideration since he was already under obligation to render those services under his employment by Numuz. So far as concerns the extra services, the doctor is not shown to have accepted the employment by Derees. Whether it was possible or not for the doctor to perform the contract for extra services may be a question. The doctor says it was impossible. That impossibility may excuse the doctor's failure to provide the extra services and explains his failure to contract to do so; it saves the doctor from any action against himself for breach of contract; even if he accepted Derees' terms it surely cannot entitle him to recover for services not rendered. Nor do we mean to suggest that the plaintiff himself thought he was entitled to compensation for these extra services not rendered.

The importance of these facts for our present purpose is that the debt for the subsequent attendance as well as for the original operation is a debt of Numuz and the promise of Derees to pay is a promise to pay the debt of another and within the statute of frauds. *Helfield* v. *Dow,* 27 *N. J. L.* 440.

There is another aspect of the case growing out of the Employers' Liability act and the supplemental legislation. The original act is readily found in *Supp. Comp. Stat., p.* 1638. The important supplemental legislation is the act of 1917, chapter 178 (*Pamph. L., p.* 522), making it obligatory upon employers to take out employers' liability insurance for the benefit of all their employes as well as themselves; the act of 1918, chapter 149 (*Pamph. L., p.* 429), creating the workmen's compensation bureau, and the act of 1919, chapter 93 (*Pamph. L., p.* 201), amending the

provisions of the original act, are also important.  The act
of 1911 provides for a statutory contract in cases where,
as in this case, the parties do not refuse to come under it;
a contract implied from the relationship of employer and
employe and regulated and controlled by the statutory pro-
visions.  The statutory provisions are not the work of the
parties or subject to alteration and control by them but are
fixed according to a supposed public policy and under the
management of state officials.  The opinion in *Mulhall* v.
*Nashau Manfacturing Co.*, 115 *Atl. Rep.* 449, 452, is a
recent convenient statement of the theory and the author-
ities supporting it.  As the compensation of the employe for
the accident cannot be decreased, even with his own consent,
it ought not to be increased, even with the assent of the
employer.  That this was the intent of the legislature appears
from the very title of the original act of 1911.  "An act
*prescribing* liability of an employer to make compensation
for injuries received by an employe in the course of his em-
ployment, establishing an elective schedule of compensation
and regulating the procedure for the determination of lia-
bility and compensation thereunder."  The act cannot pre-
scribe the liability of the employer if it leaves it open to be
fixed by private contract, and inasmuch as the amount to
be paid is prescribed, a contract to pay a different amount
cannot be implied.  It would be preposterous to say that
the contract of the employer to pay compensation is implied
from the statute, but is fixed in some other way.  The scheme
of the act, at any rate since the adoption of the insurance
provisions of 1917, requires that the rule "prescribed," quot-
ing the language of the title, should be invariable.  The
parties are bound by all the terms of the statute, and only
parties to the statutory contract are bound by its terms or
entitled to its benefits.  An examination of the statutes
demonstrates that only the employer and the employe are par-
ties to the statutory contract.  The act of 1911 implies a
contract only as between employer and employe, and makes
provisions quite inapplicable to third parties.  The act of 1917

requires the employer to forthwith make sufficient provision for the complete payment of any obligation he may incur to any injured employe or his dependent. Under the provisions of section 2 of the Workmen's Compensation act, it would be impossible for the employer or the state bureau to know how much insurance would be sufficient for the complete payment of the obligation unless they could know what the obligation was. The act of 1917, in section 8, enacts that the employer shall be liable primarily for the payment of proper compensation and shall have recourse for the amount thereof against his insurance carrier, and the insurance carrier shall be liable directly to the insured employe, or his dependents, in the event of death, insolvency, bankruptcy or other proceedings. This liability of the insurance company must depend upon its own contract and it can well insure the employer against the liability prescribed by the act, the limitations of which are known, but the legislature could not have meant to make the insurance carrier liable for amounts limited only by the bargaining power of the employer. Moreover the insurance is made by the statute to be for the benefit of the several employes of the insured employer and their dependents and enforceable by any such employe or their dependents, in their own names. It would be impossible for the insurance company ever to determine the liability as against contracts made by the employer. All possible care seems to be taken to protect the employe, even against the insolvency or death of his employer. The provision for enforcement in the name of employes clearly negatives any right to enforcement in the name of a creditor of the employe as is the present case. The employe must bring the suit even though he may be under a moral obligation to expend the money recovered for the purpose for which the statute provides it. The employer and the insurance company are entitled to deal with the employe and not be subjected to an action by strangers, which would deprive them of the estoppel of a judgment in their favor. Section 14 provides that no policy of insurance against liability arising under

the act shall contain any limitations of the liability of the insurer to an amount less than that payable by an insured on account of the risk insured against, nor shall any such policy contain any limitation of the total liability of the insurer because of the injuries to two or more persons in a single accident. This provision necessarily involves the limitation of the liability of the insurer to the employer and is quite inconsistent with any permission to the employer to increase his liability by way of special contract or extend the number of those who may sue on the policy.

In both aspects of the case a special contract by the employer with a third party is out of harmony with the scheme of the legislation. It makes impossible compliance with the statutory requirements to provide for the complete payment of obligations to employes, and also impossible to limit the liability, if there is liberty to make special contracts for compensation in excess of that provided by the statute. The result is that the employer is no more free to make larger compensation than the statute provides than he is free to make less compensation. The state, through its own agencies, determines what is proper and enforces compliance in a spirit of judicial fairness.

The schedule of compensation is found in paragraph 11, section 2 of the act of 1911, and the provision as to cases requiring medical and hospital services as amended is to be found in paragraph 14. *Pamph. L.* 1919, *p.* 208. It requires the employer to furnish reasonable medical and hospital services and medicines as and when needed, not to exceed $50 in value; and then provides that in severe cases requiring unusual medical or surgical treatment, or calling for an artificial limb or other mechanical appliances, the employe or his representative is authorized to present a petition to the workmen's compensation bureau and the commissioner is empowered, when warranted by the evidence produced, to order additional services, artificial limb or other appliances, not to exceed in total $200.

The bill in this case is less than $200 and the only remaining question is whether that amount can be recovered

by a stranger to the contract without taking the proceeding set forth in paragraph 14, just cited, and without proceeding as the act requires in other respects. It seems clear to us that since the contract between the employer and the employe is a statutory contract it includes all the provisions of the statute. It would be preposterous to prescribe the terms of contract and the procedure which the employe is bound to follow and at the same time leave a stranger free to disregard the statutory proceedings. It is essential to follow the statute in order that the insurance carrier, the employer and the employe, may all have a fair hearing before the special tribunal provided by the state. We cannot be too careful in enforcing all the provisions of the statutes. We do not say that the effect of this will in the present case prevent a recovery by the employe, Numuz; this may depend upon the circumstances other than the statutes. It may be that the period of limitation has not expired and that a petition may still be filed by Numuz and an adjudication in his favor of the $200 secured. It may be that the conduct of Derees has been such as to estop him from asserting a defence as against Numuz. We are not concerned with his rights; we are dealing with the case of his doctor who claims to recover by virtue of a contract, without being a party to the contract or following the terms of the statutes. We think he cannot recover under statutes by which he is not bound.

The judgment must therefore be reversed and the record remitted for a new trial.