## ÆTNA LIFE INS. CO. et al. v. INDUSTRIAL COMMIS-
## SION OF UTAH et al.

No. 4252.   Decided November 14, 1925.   (241 P. 223.)

1. MASTER AND SERVANT—CLAIM FOR COMPENSATION BARRED, WHERE APPLICATION NOT MADE OR FILED WITHIN YEAR AFTER INJURY. Under Workmen's Compensation Act, application must be made and filed within one year from date of injury, and, where application and evidence showed that claimant's injury was sustained on August 22, 1917, but application was not made or filed until August 19, 1924, claim for compensation was barred under the Act.[1]

2. MASTER AND SERVANT—INSURANCE COMPANY'S FILING OF EMPLOYÉ'S RECEIPT FOR PAYMENT DID NOT OPERATE AS APPLICATION FOR COMPENSATION, INVOKING JURISDICTION OF INDUSTRIAL COMMISSION. Where insurance company paid employé $369 for injuries and obtained from him a receipt therefor, which it filed with the Industrial Commission within a year after the injury, the filing of such receipt by the insurance company could not be regarded as an application or commencement of proceedings by employé for compensation, sufficiently apprising commission and employer of claim, invoking jurisdiction of commission to hear and determine employé's claim, as such use of instrument would be to give it meaning opposite from that intended, especially in view of fact that it was not brought into case except as evidence.[2]

3. MASTER AND SERVANT—TO CONFER JURISDICTION ON INDUSTRIAL COMMISSION TO MAKE AWARD, SOME SORT OF PLEADINGS OR DOCUMENT INVOKING ITS ACTION IS REQUIRED, USUALLY THE MAKING

[1] Citing *Utah Con. Min. Co.* v. *Ind. Comm.*, 57 Utah, 279, 194 P. 657, 16 A. L. R. 458; *Inter-Urban Co.* v. *Ind. Comm.*, 58 Utah, 310, 199 P. 157; *Spring Canyon Coal Co.* v. *Ind. Comm.*, 58 Utah, 608, 201 P. 173; *Rezaldo* v. *Ind. Comm.*, 61 Utah, 412, 213 P. 1083; *McLead* v. *Sou. Pac. Co.*, 64 Utah, 409, 231 P. 440.

[2] Citing *McLead* v. *Sou. Pac. Co.*, 64 Utah, 409, 231 P. 440; *Utah Fuel Co.* v. *Industrial Com.*, 59 Utah, 46, 201 P. 1034; and *Rezaldo* v. *Industrial Com.*, 61 Utah, 412, 213 P. 1083.

Corpus Juris-Cyc. References.

[1]   Workmen's Compensation Acts C. J. p. 106 n. 43.
[2]   Workmen's Compensation Acts C. J. p. 114 n. 12 New.
[3]   Workmen's Compensation Acts C. J. p. 114 n. 9, 12 New.

AND FILING OF AN APPLICATION. To confer jurisdiction on the Industrial Commission to make compensation award, some sort of initial pleading or document, however informal it may be, is required, giving notice to the parties and to the commission of the material facts on which the right is asserted and against whom claim is made, the usual form being the making and filing of an application.

Original proceeding by the Ætna Life Insurance Company and another against the Industrial Commission, Byron Light, and others to review an award of compensation.

AWARD ANNULLED.

*Emmett L. Kearney,* of Salt Lake City, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for Industrial Commission.

*Irvine, Skeen & Thurman,* of Salt Lake City, for Byron Light.

STRAUP, J.

This is a review of proceedings of the Industrial Commission wherein it, under our Industrial or Workmen's Compensation Act (Comp. Laws 1917, §§ 3061-3165), made an award to Byron Light, an employé of the Solvay Process Company. The commission awarded him the sum of $1,551, to be paid in a lump sum by the Process Company or the insurance company, its insurance carrier, in addition to the sum of $369 theretofore paid him. The findings of the commission show that Light on August 19, 1924, filed an application with the commission in which it is recited that he was employed by the Process Company at Salduro, Utah, as a machinist helper, and that on the 22d day of August, 1917 (nearly six years prior to the filing of his application), he was injured by reason of an accident arising out of and in the course of his employment whereby his wrist "was broken and crushed," and that the insurance company paid him $12

a week for 30 weeks and 4 days; that as the result of the accident he sustained permanent partial loss of the hand and wrist; and that "he believed" the amount paid was not sufficient to compensate him for his loss; and that "I believe that under the compensation act I would be entitled to receive additional compensation, and for that reason I ask that you reopen the case and adjudicate my claim for additional compensation." The findings further recite that a hearing was had, and the facts found to be that Light was injured August 22, 1917, and as in his application stated; that at the time of his injury he was paid a wage of $31.40 a week; that the Process Company had procured compensation insurance with the Ætna Life Insurance Company, who, as a result of the injury, paid the applicant compensation in the sum of $369, covering a period of 30 weeks and 4 days; and that the injury sustained by the applicant was a compound comminuted fracture, etc., about one inch above the wrist; and that as a result thereof he sustained practically "100 per cent. loss of use of the said right arm from the elbow down." No other or additional facts are found by the commission, and not anything found to excuse or account for the delay in the filing of the application, nor was it found, when the $369 or any part thereof was paid by the insurance company. Upon such findings conclusions were stated by the commission that the Process Company or the insurance company should pay Light compensation at the rate of $12 a week for 160 weeks, giving them credit for $369 theretofore paid, and requiring them to pay in a lump sum $1,551 in addition. The commission so ordered.

Among other defenses the bar of the statute of limitations was interposed by each of the companies. What the commission did with the plea, its findings, conclusions, and order are silent. As appears on the face of them, the commission went on as though there were no such plea or statute. Hence the companies are here seeking a review, claiming, among other things, that on the record the application for compensation is barred.

In the case of *Utah Con. Min. Co.* v. *Ind. Comm.*, 57 Utah, 279, 194 P. 657, 16 A. L. R. 458, this court held that an ap-

plication for compensation under the act must be made and filed within one year from the time of injury, and, unless so done, the claim for compensation is barred. Such holding was followed and approved by subsequent cases. *Inter-Urban, etc., Co.* v. *Ind. Comm.*, 58 Utah, 310, 199 P. 157; *Spring Canyon Coal Co.* v. *Ind. Comm.*, 58 Utah, 608, 201 P. 173; *Rezaldo* v. *Ind. Comm.*, 61 Utah, 412, 213 P. 1083; and *McLead* v. *Sou. Pac. Co.*, 64 Utah, 409, 231 P. 440. Thus on the face of the application and of the findings and order it appears that the injury occurred August 22, 1917, and that the application for compensation was not made or filed until August 19, 1924, and not anything is stated or found that any prior application of any kind had been made or any prior proceedings had with respect thereto or to any claim for compensation, nor anything whatsoever to excuse the delay or toll the statute; and hence, on the face of the application and the findings and order, the action or claim for compensation is clearly barred.

Upon this point counsel for defendants refer us to the cases of *Mulhall* v. *Nashua Mfg. Co.*, 80 N. H. 194, 115 A. 449, and *Chebot* v. *State Ind. Acc. Comm.*, 106 Or. 660, 212 P. 792. In the first case the statute provided that no proceedings for compensation under the Industrial Act should be maintained, unless notice of the accident was given to the employer "as soon as practicable after the happening thereof," and "unless claim for compensation has been made within six months from the occurrence of the accident." The act further provided that "no want or defect or inaccuracy of a notice shall be a bar to the maintenance of proceedings," unless the employer was prejudiced by such want, defect, or inaccuracy. The court there held that, since the giving of a notice was excusable, it must be presumed the Legislature intended that the making of a claim for compensation within six months also was excusable, although the act did not so expressly provide. Such conclusion was largely reached because of the similarity of the New Hampshire statute and the British act, which the court called the parent act. But the court noticed that the British act by express

language not only made the want or defect of notice excusable, but also made excusable, which the New Hampshire act did not, the making of a claim within the statutory period, if the failure was occasioned by mistake, absence, or other reasonable cause. Whatever may be said as to the conclusion there reached, this court is committed to a contrary doctrine that, unless claim for compensation is made and filed within the period of limitation, as held in *Utah Con. M. Co.* v. *Ind. Comm.,* supra, it is barred. Though it should be said that a failure to make or file a claim or an application for compensation within such time could for good cause be excused, yet, as already observed, not anything was alleged, testified to, or found to excuse the long delay—nearly seven years—or to toll the statute.

In the Chebot Case it was held that an application by an injured workman for increased compensation on account of changed conditions or increased disability was not the beginning of a new proceeding, but another step in the proceeding initiated by the filing of the original application for an adjustment of the claim. We do not see wherein the case helps the defendants, for here there was no ''original application for an adjustment of the claim,'' and no proceedings had with respect to any claim, and none filed until nearly seven years after the accident and injury.

All the evidence taken before and heard by the commission was preserved, and as part of the record was transmitted to us. We have examined and reviewed it. But as to the bar of the statute it does not help the applicant nor support the order in such respect. The evidence shows that the injury occurred at the time stated in the application, and as found by the commission; that between the time of injury and January 21, 1918, the insurance company paid the applicant, in consequence of his injury, various payments at the rate of $12 per week, and on January 21, 1918, at his request, paid him an additional sum of $117, making in all, with the weekly payments theretofore paid, the sum of $369, and on that day took from him a final receipt as follows:

"Original.

"Final Compensation Settlement Receipt.

"Do not sign this receipt unless you intend to end payments of compensation and close the case.

"Received of Solvay Process Company and Ætna Life Insurance Co. the sum of one hundred and seventeen & no/100 dollars making in all, with weekly payments already received by me, the total sum of three hundred sixty-nine and no/100 dollars, in settlement and satisfaction of all claims for compensation or damages, subject to review as provided by law, on account of injuries suffered by breaking arm in ditching machine at Salduro, on or about the 22d day of August, 1917, while in the employ of Solvay Process Company.

"Witness my hand this 21st day of January, 1918.

Byron Light."

This receipt by the insurance company was filed with the commission, where it remained on file from thence on. No action was taken by the commission with respect to it, either of approval or disapproval or otherwise, nor was it asked by any one to do so. About a week after signing the receipt the applicant, as he testified, re-entered the employ of the Process Company, and continued in its employ until April, 1918, when he was discharged, because, as he testified, the company accused him of being implicated in some sort of whisky deal of which he claimed he was innocent. From that time until about the middle of August, 1924, he was in the employ and worked for various companies off and on at Bingham, Alta, Gold Hill, American Falls, and elsewhere, at a wage running from $4 to $6 per day. About the middle of August, 1924, in conversation with a friend to whom the applicant showed his injured arm, his friend asked him what he "got for that," and the applicant stated "300 or $400," whereupon his friend told him, "you got more money coming to you out of that." To this the applicant replied, "I didn't think so, that was the agreement when I went to work," and his friend told him to "look it up"; and then the applicant consulted members of the commission, and thereafter filed his application. The applicant further testified that before the final settlement was made he talked with a lawyer about it, who advised him that he could not sue the company after he had accepted the first payment for compensation, and that about all he could do was to accept what the company offered, and

that he afterwards went to the office of the insurance company, and offered to make a final settlement for $117, in addition to what had been paid him theretofore, which finally was accepted by the company, the money paid, and the receipt given; that he was not paid anything thereafter; and made no demand for any additional compensation until a few days before the filing of his application. The applicant did not claim, nor did he testify with respect to, any fraud, misrepresentation, deceit, or overreaching, nor did he give any testimony, nor was there any given on his behalf, which in any degree, either in fact or in law, tended to excuse the delay in filing his application or to toll the statute. Five doctors examined the applicant's arm at the hearing. Some of them testified that the loss of the arm from the elbow down was from 40 to 60 per cent. and some 75 per cent. The commission found it was 100 per cent.

The receipt was put in evidence by the commission. The proceedings with respect to it were as follows:

"Mr. Knerr (one of the commission): Let the record show the commission has on file a receipt signed by Byron Light. Is that your signature, Mr. Light?

"Mr. Light: Yes, sir.

"Mr. Knerr: Which reads as follows: (The receipt was then read into the record.)

"Mr. Knerr: This will be known as Commission's Exhibit A, and will be made a part of the record, and will be considered as evidence by the commission."

The purpose of putting the receipt in evidence by the commission was not stated. It may be assumed it was to show part payment, or, as argued in the brief of respondents, as showing the commencement or tendency of an action or proceeding for compensation, and that the application which was filed in August, 1924, was "to adjust and terminate the compensation." Though none was stated, still the pertinent inquiry is, What purpose or effect did the giving of the receipt and the filing of it with the commission have? It was filed within a year from the time of the injury. May it be regarded as the commencement of proceedings for compensation and as pending until some action was taken on it by the

commission either of approval or disapproval or until the compensation due the applicant was by the commission determined and adjusted, regardless of the settlement? We think the query is answered in the negative by the case of *Rezaldo* v. *Ind. Comm.*, supra. There the injured employé wrote this letter, addressed to "Dear Sir," and sent it to the commission, who received it:

"Holy Cross, April 30, 1921.

"Dear Sir: I was working for the Spring Canyon Coal Company at Storrs, Utah. Was paying my hospital fees each month, and there was some difficulty over my being sent to the hospital. My foot was injured in their mine. Have been here for three months and am paying my own bill.

"Would appreciate very much a visit from one of your representatives so I could explain this matter to him.

"Waiting a reply from you, I remain,

"Sincerely yours,                                Fred Rezaldo.

"My address: Fred Rezaldo, Ward K, Holy Cross Hospital, Salt Lake City."

With respect to it this court propounded the question whether the letter was "intended as an application for compensation," and, if so, whether it was sufficient "in form and substance to constitute such an application as to invoke the jurisdiction of the commission." The court held it was not, saying that from the letter itself and the circumstances disclosed by the record it was shown that the applicant "did not intend the letter as an application for compensation." Said the court further:

"But assuming that his intention was immaterial in that regard, and that the letter was sufficient in form and substance to constitute an application and to invoke the jurisdiction of the commission, must he not still fail in this proceeding? While it is true that an application for compensation should not be required to be formal and to state the facts as is the case in a complaint or other pleading, yet the application should at least contain sufficient to apprise the commission and the employer that the employé making it was injured in the course of his employment and at a certain time and place, and that he makes application for compensation under the Compensation Act (Comp. Laws 1917, §§ 3061-3165). The letter in question, considered by what it contains, in no way apprises either the Commission or any one else that it was intended or filed as an application for compensation."

Surely the receipt here was no more than the letter there. It was much less. It was not even filed by or on behalf of the applicant or for his benefit. It was filed by and for the benefit of the insurance carrier. In no sense was it intended, nor may it be regarded, as an application for compensation. Giving the receipt its ordinary significance, the very opposite is implied and intended. Nor does it as to substance meet the requirements of an application as stated by this court in the Rezaldo Case. Thus do we think the case here is controlled by that case, and does not, because different, come within the cases of *McLead* v. *Sou. Pac. Co.*, supra; *Utah Fuel Co.* v. *Industrial Com.*, 59 Utah 46, 201 P. 1034, as a reading of them shows. In the former the facts are different. In the latter, while there was no formal application, yet the parties at the hearing without objection treated and regarded it as such, or as though a proper application had been made and filed.

There is no doubt that to confer jurisdiction on the commission of a cause or proceeding to award compensation requires some sort of initial pleading or document seeking compensation or relief and invoking action. That was held in the Rezaldo Case. On that fundamental necessarily are based the decisions that, unless application for compensation is made and filed within the statutory period, all claims for compensation are barred. Such jurisdiction ordinarily is conferred and invoked by making and filing an application seeking compensation or relief. The commission was created to hear and determine as between the employer and his injured servant the matters and things prescribed by the statute, among them the relation of employer and employé, whether the injury was accidental and arose out of or in the course of employment, the extent of the injury or disability, etc., and to award and fix compensation as by the act provided. To do that requires something to invoke its action in a cause or proceeding, some kind of initial pleading or document, however informal it may be, giving notice to the parties and to the commission of the material facts on which the right asserted is to depend and against whom claim is made. The commission, though largely an adminis-

trative body still, vested with and exercising quasi judicial powers within limits fixed by the statute to properly proceed with a cause, must have some sort of record upon which are stated the jurisdictional facts and the substance of the action. Such a record is a necessity in the due administration of the law. The receipt here cannot and does not serve, nor was it filed for, such purpose. To contend that the filing of the receipt with the commission by the insurance company was to bring a cause against the employer or carrier before the commission in favor of the applicant seeking to have his compensation determined and awarded is to ascribe to it a purpose manifestly not intended and in conflict with the ordinary significance of such a document or instrument. To give it a use and purpose of an initial pleading required to contain jurisdictional facts, and as authorizing or seeking the commission to hear and determine the compensation due the applicant, is, as we think, to distort it. Further, the case was not predicated on the receipt, but on the written application made and filed in August, 1924, and, as is seen, the receipt was brought into the record merely as evidence and not as the basis of the action, and was not and may not be regarded as the mandatory record, or as a part of it, conferring and invoking jurisdiction or as any record or document upon which a right of the applicant or on his behalf was asserted or was to depend.

The conclusion thus follows that the action was barred. The judgment, therefore, is that the order of the commission be and it hereby is annulled and vacated.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.