# REZALDO v. INDUSTRIAL COMMISSION OF UTAH.

## No. 3898. Decided March 17, 1923. (213 Pac. 1083.)

1. MASTER AND SERVANT—EMPLOYÉ HELD NOT PREVENTED BY FRAUD FROM APPLYING FOR COMPENSATION. Correspondence between an employé, the Industrial Commission, and the employer, in which the employé stated his injury resulted from an accident while he was working for another employer in another state, as a result of which he was advised to and did make claim for compensation before the Industrial Board of the other state which denied his application because it was too late, *held* clearly to show that he was not fraudulently advised by his employer's agent to make the claim in the other state, and therefore that the time within which he was required to apply within the state for compensation was not extended.[1]

2. MASTER AND SERVANT—LETTER TO COMMISSION HELD NOT INTENDED AS APPLICATION FOR COMPENSATION. A letter by the employé to the Industrial Commission stating the employé was injured in his employer's mine and was in the hospital paying his own bill and would appreciate a visit from a representative of the Commission *held* not intended as an application for compensation, and not so considered by the Commission.

3. MASTER AND SERVANT—REQUISITES OF APPLICATION FOR COMPENSATION STATED. While an application for compensation need not be formal nor state the facts as in a complaint or other pleading, it should at least contain sufficient to apprise the Commission and the employer that the employé making it was injured in the course of his employment and at a certain time and place, and that he makes application for compensation under the Compensation Act.

4. MASTER AND SERVANT—APPLICATION FOR COMPENSATION HELD ABANDONED BY SUBSEQUENT APPLICATION TO COMMISSION OF ANOTHER STATE. Even if a letter to the Industrial Commission by an injured employé could be considered an application for compensation, it was abandoned where the employé thereafter made application to the Commission of another state for compensation, alleging that the same injury was received while em-

---

[1] *Utah Con. Min. Co.* v. *Ind. Comm.*, 57 Utah, 279, 194 Pac. 657, 16 A. L. R. 458; *Interurban Const. Co.* v. *Ind. Comm.*, 58 Utah, 310, 199 Pac. 157; and *Spring Canyon Coal Co.* v. *Ind. Comm.*, 58 Utah, 608, 201 Pac. 173.

ployed in the other state, there being no showing that the ap-
plicant did not know when and where he received his injury,
and therefore that application cannot be considered as the in-
stitution of proceedings before the Commission, which pre-
vented the running of the statute of limitations.

Proceedings before the Industrial Commission by Fred
Rezaldo, employé, to recover compensation for an injury,
opposed by the Spring Canyon Coal Company, employer.
Commission denied compensation on the ground that the
claim was barred, and the employé applies for writ of review.

COMMISSION'S DECISION AFFIRMED.

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake
City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,*
Asst. Atty. Gen., for defendants.

FRICK, J.

Plaintiff made application to this court for a writ of
review directed to the Industrial ·Commission of Utah, here-
inafter called Commission.

The record of the proceedings had before the Commission
has been duly certified, and the case was submitted by the
respective parties to this court upon the record as certified,
which discloses that on April 30, 1921, the plaintiff wrote
a letter which in due time was delivered to the Commission,
although it was not addressed to any one in particular.   The
letter, including the date and address of the plaintiff, reads
as follows:

"Holy Cross, April 30, 1921.
   "Dear Sir:   I was working for the Spring Canyon Coal Com-
pany at Storrs, Utah.   Was paying my hospital fees each month,
and there was some difficulty over my being sent to the hospital.
My foot was injured in their mine.   Have been here for three
months and am paying my own bill.

"Would appreciate very much a visit from one of your representatives so I could explain this matter to him.

"Waiting a reply from you I remain,

"Sincerely yours,                                    Fred Rezaldo.

"My address:   Fred Rezaldo, Ward K, Holy Cross Hospital, Salt Lake City."

From the record it further appears that the letter was by the Commission called to the attention of one F. D. Brown, who was in the employ of the company mentioned in plaintiff's letter in its welfare department; that, pursuant to the statements contained in the letter, Mr. Brown called on the plaintiff at the hospital for the purpose of obtaining the explanation from him to which he referred in the letter; that after the interview with the plaintiff Mr. Brown, on May 3, 1921, wrote the Commission as follows:

"In line with our conversation this morning, I called on Mr. Fred Rezaldo, Ward K, Holy Cross Hospital.  This party was taken to the hospital by John Ferrando as a private case—Dr. Osborne.

"I find from conversation with Mr. Rezaldo that he was injured in January, 1919, while employed by the Extension Gold Mining Company, at Tonopah, Nev., at which time he sustained a crushing injury to his right ankle.  The infected condition of the foot when he was taken to the hospital, together with subsequent operation for the removal of dead bone, was the result of injury sustained in January, 1919, at Tonopah, Nev.

"On behalf of Mr. Rezaldo, may I ask that you be kind enough to take this matter up with the Industrial Commission of Nevada, or the Extension Gold Mining Company, to the end that the benefits of the Nevada Compensation Law may be applied in his case.

"Mr. Rezaldo arrived at the Holy Cross Hospital on February 13, 1921, with his right foot in a very badly infected condition.  I am sending copy of this letter to our superintendent with the request that he advise date on which Mr. Rezaldo laid off on account of this injury."

In pursuance of the request contained in the foregoing letter, the Commission took up the matter with the Industrial Commission of Nevada, and thereafter, on the 7th day of October, 1921, plaintiff made a formal application to the Industrial Commission of Nevada for compensation for an injury which he alleged he had received on February 20, 1919, while in the employ of the Tonopah Extension Gold Mining Company in its mine at Tonapah, Nev.  The appli-

cation and claim of plaintiff, filed as aforesaid, were sup-
ported by a statement made by him under oath in the form
of an affidavit which was filed with the Industrial Commis-
sion of Nevada, and in which statement the time and place
of the alleged accident and injury while working in the
mine aforesaid, together with the particulars of how the
accident occurred and the extent of the injury, were fully
set forth.

Pursuant to the plaintiff's application, the Industrial Com-
mission of Nevada made an investigation respecting his claim,
and after doing so reported to the Utah Commission that the
claim had to be denied upon the ground that the applica-
tion was not filed within the time required by the Nevada
statute.

We remark that the record also contains a mass of corre-
spondence from which it is made to appear that the Com-
mission, as well as others, including the Industrial Commis-
sion of Nevada, made special efforts to ascertain the real
facts concerning plaintiff's claim, and that they took great
pains to aid and assist him in obtaining compensation if it
should be found that he was legally entitled thereto.

From the record it also appears that some time before
plaintiff filed his claim with the Industrial Commission of
Nevada he had a conference with a member of the Utah Com-
mission to whom he made substantially the same statements
and representations that he subsequently set forth in the
affidavit filed with the Industrial Commission of Nevada in
support of his claim against the Tonopah Extension Gold
Mining Company, and that the Utah Commission suggested
to the plaintiff that he make an application to the Industrial
Commission of Nevada for compensation.

It further appears that after the Industrial Commission
of Nevada, had denied plaintiff's claim he, on the 20th day
of July, 1922, made what is called a formal application to
the Commission for an alleged injury which he claimed to
have received on the 2d day of January, 1921, while em-
ployed by the Spring Canyon Coal Company, the company

mentioned in his letter of April 30, 1921, and hereinafter referred to as defendant.

The defendant, by its attorneys, resisted plaintiff's claim upon the ground that the same was barred by the statute of limitations. In order to avoid the plea of the statute of limitations, the plaintiff, on the 24th day of August, 1922, through his attorneys, asked leave of the Commission to file, and they did file, what they call an ''amendment to his [plaintiff's] formal application for adjustment of claim.'' We have given the form of the so-called amendment in counsel's own words for the reason that all through the record plaintiff's application which he made on the 20th day of July, 1922, is referred to as his ''formal application,'' while in this court plaintiff's letter written on the 30th day of April, 1921, is also called an application.

So far as the record discloses, the Commission never made any order either allowing or denying plaintiff's so-called ''amendment'' to his ''formal'' application. The so-called amendment is made a part of the record and was undoubtedly considered by the Commission. It is, however, material only for the reason that the plaintiff alleges therein that he was induced to make the application to the Industrial Commission of Nevada by and through the advice, direction, and importunities of Mr. Brown, defendant's employé, and that the same were made by Mr. Brown to shield the defendant and were made in fraud of plaintiff's rights, etc. It is therefore insisted that, inasmuch as plaintiff was by Mr. Brown induced to make an application to the Industrial Commission of Nevada for the alleged purpose of shielding the defendant, it is estopped from successfully interposing the plea of the statute of limitations in this case. In this connection it is, however, also insisted with much vigor that plaintiff's letter of April 30, 1921, constituted a sufficient application to arrest the running of the statute of limitations against his claim.

Upon substantially the foregoing facts the Commission rendered its decision, in which it held that plaintiff had failed to make application within the time required by the deci-

sions of this court in the cases of *Utah Con. Min. Co.* v. *Ind. Comm.*, 57 Utah, 279, 194 Pac. 657, 16 A. L. R. 458, *Interurban Const. Co.* v. *Ind. Comm.*, 58 Utah, 310, 199 Pac. 157, and *Spring Canyon Coal Co.* v. *Ind. Comm.*, 58 Utah, 608, 201 Pac. 173, and that for that reason his claim was barred.

Plaintiff's contention that he was induced by Mr. Brown to file a claim for compensation with the Industrial Commission of Nevada in order to shield the defendant is untenable. The facts disclosed by the record, all of which clearly appear from the mass of correspondence to which we have previously referred, make it palpably clear that under the circumstances the plaintiff was not induced by Mr. Brown, or by any one else, to file a claim against a Nevada employer for the purpose of shielding the defendant, or for any other purpose except to obtain proper relief for the alleged Nevada injury. Moreover, the record clearly shows that every one, not excepting Mr. Brown, acted in good faith and with but one object in view, and that was to aid the plaintiff in his dilemma. From the information Mr. Brown had from the defendant's physician, which information was also imparted to the Commission, and especially in view of plaintiff's statements respecting the source of his injuries and his condition at the time Brown first saw him at the hospital, Mr. Brown, as a reasonable man, could not have acted otherwise than he did in the matter.

The writer feels constrained to add in this connection that he fully appreciates the fact that plaintiff's attorneys insist that their client was misled by Mr. Brown and was thus induced to file a claim for compensation with the Nevada Industrial Commission against a Nevada employer instead of preferring the claim against the defendant. Counsel's contention is, however, not supported by the record and must be attributed to their zeal for their client's cause and to their sympathy for his then condition. The circumstances disclosed in the record before us afford a striking illustration of how, by reason of their zeal for their clients, attorneys may at times be betrayed into making charges of bad faith and of ulterior motives in others which under ordinary cir-

cumstances they would not think of making. The writer states without hesitation that there not only is nothing in the record which supports counsel's contention, but it contains ample proof that no one misled their client. The facts and circumstances that are found in plaintiff's affidavit filed in support of his claim with the Industrial Commission of Nevada, and which facts and circumstances could have been known only to himself and could not have been known by Mr. Brown, constitute strong proof that the charge against Brown is an afterthought. Moreover, in view of the circumstances detailed by the plaintiff, and particularly his statements under oath respecting his injuries, the Commission could have arrived at no other conclusion than that plaintiff had stated the truth in the affidavit filed with the Industrial Commission of Nevada, and that the facts stated in his so-called amendment were not, and in the nature of things could not be, true.

This brings us to the only real question in this case, namely: Was plaintiff's letter of April 30, 1921, intended as an application for compensation against the defendant, and, if so, was it sufficient in form and substance to constitute such an application and to invoke the jurisdiction of the Commission?

From what is said in the letter, and from the circumstances disclosed by the record, it is very clear that plaintiff did not intend that the letter be considered as an application for compensation. It is equally clear that the Commission did not so consider it. The letter must therefore be considered merely as an effort on the part of the plaintiff to obtain some advice in view of the condition in which he then was. The facts that the plaintiff had at no time notified the defendant that he had sustained an injury, that he did not consult defendant's physician, but sought another physician of his own choice, and that he went to the hospital of his own selection, all clearly show that he did not intend the letter as an application for compensation.

But, assuming that his intention was immaterial in that regard, and that the letter was sufficient in form and sub-

stance to constitute an application and to invoke the juris-
diction of the Commission, must he not still fail in this
proceeding? While it is true that an application for compen-
sation should not be required to be formal and to state the
facts as is the case in a complaint or other pleading, yet the
application should at least contain sufficient to apprise
the Commission and the employer that the employé
making it was injured in the course of his employment
and at a certain time and place, and that he makes applica-
tion for compensation under the Compensation Act (Comp.
Laws 1917, §§ 3061-3165). The letter in question, considered
by what it contains, in no way apprises either the Commis-
sion or any one else that it was intended or filed as an ap-
plication for compensation.

If it were assumed, however, that the letter was a suffi-
cient application for compensation, yet, under the undis-
puted and indisputable facts and circumstances of this case,
the plaintiff's claim, if any he had against the defendant,
was barred. In this connection it must be remembered that,
if plaintiff's letter constituted an application against the
defendant, he nevertheless wholly and absolutely abandoned
that claim by filing an application with the Industrial Com-
mission of Nevada for compensation against a former em-
ployer and for a previous injury. No doubt, although a
claim has been filed, it may be abandoned. If, therefore, a
claim may be adandoned, and assuming plaintiff had filed
one against the defendant, he nevertheless adandoned it by
filing the claim in Nevada. There may be cases in which
there may be some uncertainty respecting which one of
several persons may be liable for compensation for a partic-
ular injury, and hence some latitude must be given to em-
ployés in filing their claims. No such condition existed in
this case, however. The plaintiff knew precisely where, when,
and how he was injured and by whom he was employed, and
acted accordingly. If, therefore, it shall be assumed
that the letter of April 30, 1921, was a sufficient appli-
cation for compensation, yet that application was man-
ifestly abandoned. Nothing was done by way of filing a

claim against the defendant until the 20th day of July, 1922, or more than 18 months after the alleged injury and about 15 months after the letter was written. Then, again, no effort was made to amend the application until more than 19 months had elapsed after the alleged injury. In these circumstances how can it successfully be contended that the statute of limitations has not barred the plaintiff's claim? If the statute is to be given any effect, and the former decisions of this court are to be adhered to, no other conclusion than the one arrived at by the Commission is permissible in this case.

The decision of the Commission that plaintiff's claim for compensation, if any he had, against the defendant, is barred, should therefore be, and it accordingly is, affirmed.

WEBER, C. J., and THURMAN and CHERRY, JJ., concur.

GIDEON, J. I concur in the judgment affirming the order of the Commission denying compensation in this case. I am unable to agree, however, that the letter of April 30, 1920, was not sufficient to warrant the Commission in taking jurisdiction of the plaintiff's claim for compensation. The authorities do not seem to require any particular form or manner of conveying to the Commission information that an injury has been sustained and that the claimant is entitled to have the Commission ascertain the facts surrounding the injury or accident. I am quite sure that, if the Commission had considered the letter an application and had followed it up by a hearing and either allowed or denied the award, this court would have found no difficulty in holding the letter sufficient to give the Commission jurisdiction. The conduct of the plaintiff subsequent to the writing of the letter, however, was such that in my judgment the Commission was entirely justified in refusing the petition or application for relief.