## PALLE et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5097.   Decided January 18, 1932.   (7 P. [2d] 284.)

48

*Lewis Jones,* of Brigham, for plaintiffs.

*Geo. P. Parker,* Atty. Gen., and *J. Wesley Horsley,* of Brigham, for defendants.

STRAUP, J.

A proceeding of the industrial commission granting an award of compensation to the applicant, Lloyd Jensen, is brought here by the alleged employer for review. The first point made is that no sufficient application for compensation was made and filed with the commission authorizing it to proceed with and hear the cause. The sufficiency of the application, or the want of one, was timely challenged by the alleged employer at the threshold of the case by demurrer and by his objection to the commission on such ground to hear the case, all of which were overruled.

In the case of *Ætna Life Insurance Co.* v. *Industrial Commission,* 66 Utah 235, 241 P. 223, 227, we said:

"There is no doubt that to confer jurisdiction on the commission of a cause or proceeding to award compensation requires some sort

of initial pleading or document seeking compensation or relief and invoking action. That was held in the *Rezaldo Case* [61 Utah 412, 213 P. 1083]. On that fundamental necessarily are based the decisions that, unless application for compensation is made and filed within the statutory period, all claims for compensation are barred. Such jurisdiction ordinarily is conferred and invoked by making and filing an application seeking compensation or relief. The commission was created to hear and determine as between the employer and his injured servant the matters and things prescribed by the statute, among them the relation of employer and employee, whether the injury was accidental and arose out of or in the course of employment, the extent of the injury or disability, etc., and to award and fix compensation as by the act provided. To do that requires something to invoke its action in a cause or proceeding, some kind of initial pleading or document, however informal it may be, giving notice to the parties and to the commission of the material facts on which the right asserted is to depend and against whom claim is made."

The question thus is: Was the rule in such particular substantially complied with? The sufficiency of such an application or initial pleading of course is not to be measured by the requirements of a complaint or initial pleading in an ordinary civil cause. Still some kind of initial pleading or document, however informal, is required to properly invoke action and jurisdiction of the commission. No formal or written application was here filed. What by the applicant is urged to be sufficient application is this: On June 2, 1930, the applicant wrote a letter to a member of the commission stating that he on May 2d was "in an accident and was injured" and inquired if the contractor for whom he was working was supposed to carry protection for his men and what the law was on the subject. In reply to that the secretary of the board wrote the applicant that he failed to state the name of his employer and for that reason "we are unable to advise" whether the employer was or was not carrying compensation coverage; that if the employer had "three or more persons working for him at the time of the accident" and failed to provide compensation insurance, the applicant could sue him in the courts or request the commission to assume jurisdiction.

In reply thereto the applicant wrote a member of the commission that he had seen "J. A. Palle, his boss, and that he refused to do anything and stated that he did not carry any insurance and that he would fight to the end and that I now turn it over to your jurisdiction." A member of the commission then wrote the applicant to give (1) the name of the employer; (2) the nature of the business in which he was engaged; (3) the place of his business; (4) the number of men in his service and the date he was injured; (5) the wage he was getting, and what he was doing at the time of his injury. On June 7 the applicant wrote the commission that his employer was "Mr. J. A. Palle, Brigham City, Utah; 2nd, General cement contractor and Builder, Brigham City; 4th, 5 men; 5th, $3.20 per 8 hr. day; 6th, Hauling gravel with Mr. Palle's team and Dr. Pearse is taking care of me."

On receipt of that the commission on July 2 on a regularly printed blank mailed to J. A. Palle a notice of "hearing of application for adjustment of claim in the case wherein Lloyd Jensen was the applicant v. J. A. Palle, defendant," notifying him that an application had been filed by the applicant against "himself" (J. A. Palle), and that the hearing thereon was set July 16 at a stated hour and place.

On July 11 the defendant J. A. Palle, the only person notified or served, by and through his attorney, served on the attorney representing the applicant, a general demurrer and an answer, and on the next day filed them with the commission. When on the 16th the matter came on for hearing, the applicant being represented by counsel and the defendant J. A. Palle by counsel, the demurrer was overruled, the chairman of the commission stating that the defendant J. A. Palle on July 2 was served with notice of the hearing and that he had failed since then to make any inquiry "he cared to make to get detail information from the industrial commission." Evidently what the chairman of the commission meant by that was that the defendant had the opportunity to come before the commission and see the correspondence that had taken place between the commission and

the applicant, which, by the chairman of the commission, was read into the record before the hearing commenced.

Undoubtedly great liberality as to form and substance of an application for compensation is to be indulged, especially where the applicant, as often is the case, is unrepresented by counsel. On the other hand, the defendant or alleged employer ought not to be required to examine or read over a rather protracted correspondence had between the applicant and the commission to ascertain the nature of the claim made and against whom it is made. That ought to be contained and set forth in some writing or document filed with the commission as and for an application. The nearest approach to that is the last letter written by the applicant to the commission. When the demurrer was filed, it would have been an easy matter for counsel for the applicant to have filed an amended and more complete application. The letter referred to and considered as an application for compensation, though faulty to be sure in several particulars, nevertheless was as we think sufficient to confer jurisdiction on the commission to go forward with the case. Still such a practice is not to be commended when timely challenged, as here it was, and the case not proceeded with as though a proper or sufficient application had been made.

As is seen, the application for compensation was made alone against J. A. Pallee. All of the proceedings prior to the rendition of the decision were characterized as in the case of "Lloyd Jensen, the applicant, v. J. A. Palle defendant." The notice of the hearing was so given and alone was served on J. A. Palle. The whole of the proceeding carried on by the applicant was on the theory that J. A. Palle alone was the employer and that the obligation to pay compensation was his sole and individual obligation. The applicant testified that he was hired alone by J. A. Palle, worked for him alone, and was paid by him alone. The defendant J. A. Palle specifically and generally denied all of the material allegations or statements in the so-called application for compensation. Evidence was given by him and others to show that the business carried on and in which the appli-

cant was employed was a copartnership carried on in the firm name of J. A. Palle & Sons, consisting of J. A. Palle, F. A. Larsen, and H. A. Palle, members of the firm and partners in the business. The great weight of the evidence shows that to be the case. The commission so found. It, however, without notice or process served on F. A. Larsen or H. A. Palle, without their appearance in the case as parties thereto and without either of them having been made parties to the cause and without any claim or demand having been made against either, rendered and entered an order against the co-partnership itself and against each member of the firm individually, including F. A. Larsen and H. A. Palle, without any amendment whatever of the application as to parties or otherwise; and in such respect the commission ordered that the compensation be paid "by the defendant co-partnership consisting of J. A. Palle, F. A. Larsen and H. A. Palle and in the event of its failure or inability to pay the same then by the said members thereof jointly and severally."

The application having been filed and the claim for compensation made only against J. A. Palle individually, and no amendment having been made as to parties or otherwise, the commission was not authorized to make an award against the partnership. *Prows* v. *Hawley*, 72 Utah 444, 271 P. 31. It is just as clear that Larsen and H. A. Palle not having been made parties to the cause, no notice or process of any kind served on them, no claim or demand made of them, and no amendment of the application having been made, no valid order could have been made against either of them. Whether or not an order could have been made against J. A. Palle individually in the proceeding alone against him on an alleged individual obligation and none other, when the evidence and the findings show that the obligation was a partnership obligation, is not so clear. As to that the authorities are in conflict, however to a large extent because of different statutory provisions. Some statutes expressly provide that in such case an individual judgment may be taken against such member served with notice.

Under the common law members of a co-partnership are jointly and not severally liable for the debts of the firm, and hence one member of a partnership could not be sued for such a debt without joining all the members thereof as defendants (4 Bancroft Code Pleadings, 3792), nor could he be sued in the firm name alone, because the partnership at common law was not regarded as a legal entity distinct from the individuals composing it. 47 C. J. 747, 903, 947. In most states the matter is regulated by statute. Under some statutes members of a co-partnership are regarded as jointly and severally liable for a partnership debt and hence all or any one may be sued at the option of the plaintiff, and by some statutes it is expressly provided that all members of a co-partnership, or any member thereof, may be sued for a debt or obligation of the partnership.

We have a general statute relating to parties, Comp. Laws Utah 1917, § 6510, which provides that "those who are united in interest must be joined as plaintiffs or defendants," etc., and by section 6511, that "persons severally liable upon the same obligation or instrument," including parties to bills of exchange and promissory notes and sureties, etc., "may all, or any of them, be included in the same action, at the option of the plaintiff." There is a conflict in the authorities as to whether such a general provision as section 6511 is applicable to a partnership obligation not founded on a written instrument or writing or where the individual member of the firm sued alone had not by some agreement other than the partnership agreement bound himself to become individually liable (47 C. J. 962, 963, and notes), and in some it has been held that although by a statute partners are jointly and severally liable for firm obligations, yet that such a provision applies only as to a judgment rendered against the firm which may be executed jointly and severally against members of the firm, but does not permit a partner alone to be sued individually for a debt of the firm which is neither dissolved nor bankrupt, while other courts have held that a judgment rendered against a partnership alone may not first be satisfied out of

the individual property of its members. *Hamner* v. *Ballantyne,* 16 Utah 436, 52 P. 770, 67 Am. St. Rep. 643.

And then there is section 6520, which provides that a partnership or other association, not a corporation, transacting business under a common name, may be sued by such common name and that the judgment in the action shall bind the joint property of all the associates in the same manner as if all had been named defendants and had been sued upon their joint liabilities. Let it be assumed that under such a statute the partnership is regarded as a legal entity and as such may be sued. However, as is seen the cause was not against the partnership, but only against J. A. Palle as his individual obligation and not otherwise, and thus no order could properly have been made against the partnership.

By our Session Laws 1921, chap. 89, p. 253, the Legislature adopted what is known as the Uniform Partnership Act. Thereunder by sections 13 and 14, pp. 256, 257, partners are jointly and severally liable for wrongful acts of a partner injurious to a third person; and by section 15 are made only jointly liable for all other debts and obligations of the partnership but that any partner may enter into a separate obligation or agreement to perform a partnership contract. With respect thereto it, in 20 Cal. Jur. 740, is said:

"According to the rule existing at common law and declared by the Civil Code, the liability of the members of a partnership for the obligation of the firm is joint; it is not joint and several. That is to say, the obligee or creditor may not proceed against the members individually or separately, but only jointly, all of the partners being necessary parties to an action to enforce the obligation or debt."

We think it clear that the claim or demand here in question is not within either section 13 or 14 of the Uniform Partnership Act rendering the members of the firm jointly and severally liable, but is within section 15 rendering them only jointly liable. When a partnership is sued in the firm name and an award made against it

in the partnership name, whether the award must first be satisfied out of ·the joint property of the co-partnership before it may be satisfied out of the individual property of any one or of all the members of the co-partnership, we do not now decide, as no such question is before us. What we decide is that an individual member may not be sued on an alleged claim of only an individual obligation and recover against him on proof of a partnership obligation not coming within either section 13 or 14 as a joint and several obligation but coming under section 15 as only a joint obligation, without making the partnership, or all the members thereof (except dormant members), parties. Neither may it successfully be urged that in such case there is only a defect of parties, to be taken advantage of by special demurrer or by answer. When in an action against a co-partnership on a partnership debt or obligation, or against the members thereof comprising it, or both, and all of the members are not named as parties, then it may well be said that there is a defect of parties which can only be taken advantage of by special demurrer or by answer. If, however, in a suit against one in his individual capacity on only an alleged individual claim, there is not anything in the pleadings to advise him that the demanded claim is against a partnership or against him as a member of a co-partnership, he is under no obligation to set up a nonjoinder of his partners. 47 C. J. 965. We thus are of the opinion that the order must be set aside even as to J. A. Palle.

Since the case is to be remanded to the commission, it may be necessary to consider a further presented question. To bring an employer under the act it is essential to show that he had "in service three or more workmen or operatives regularly employed" in the business, etc. The statute, Laws of 1919, chap. 63, p. 155, in such particular, provides that "every person, firm and private corporation, including every public utility, that has in service three or more workmen or operatives regularly employed in the same business, or in or about the same establishment, under any contract of hire, express or implied,

oral or written," except agricultural laborers and domestic servants, is subject to the provisions of our Workmen's Compensation Act. The statute further provides that the term "regularly" as therein used "shall include all employments, whether continuous throughout the year or for only a portion of the year. It means all employments in the usual course of the trade, business, profession or occupation of an employer." As found by the commission and as shown by the evidence, the applicant Lloyd Jensen was in the employ of J. A. Palle & Son, a co-partnership, who were engaged in the business of concrete and cement work chiefly on small jobs. The commission further found that the partnership "had three or more men engaged in their regular trade or business" and had failed to comply with the Workmen's Compensation Act in procuring workmen's compensation. Such finding is challenged in that it is claimed the evidence is insufficient to show that the partnership had "three men regularly employed" in the business on the day and at the time of the accident. The applicant testified that on the day and at the time of the accident, May 2, 1930, J. A. Palle, who as he testified was the sole employer, had five men in his employ in the business. But therein he included F. A. Larsen and H. A. Palle, who as the commission found and as the evidence shows were partners in the business and hence were not employees. The other three men, who the applicant testified were employed in the business on the day and at the time of the accident, were himself, Kenneth Jensen, and Pete Nelson. No claim is made that the applicant Lloyd Jensen was not regularly employed by the partnership in and about its business. There is a conflict in the evidence as to whether the gravel which he was hauling when the team ran away and injured him was being hauled in connection with or for the business carried on by the partnership, or whether it was being hauled to the residence of the applicant for his own use and benefit. The applicant testified that the gravel hauled by him was to be taken to the residence of J. A. Palle and there to be unloaded for use in some future work in the business when

needed, and that he on several prior occasions had done that at the request of J. A. Palle. The regular employment of the applicant was driving the team hauling sand and gravel used in the business and when he was not doing that he assisted in mixing concrete. We think there is sufficient evidence to justify a finding that the applicant at the time of the accident was engaged in the business of the co-partnership and then was hauling gravel to be used in future work or business of the co-partnership.

What in this respect chiefly divides the parties is as to whether Kenneth Jensen and Pete Nelson were "regularly employed" in the business of the co-partnership. The members of the co-partnership themselves, with what men they hired, labored and performed work in and about █ construction works and the business. That on the day of the accident the partnership had three men, the applicant, Kenneth Jensen, and Pete Nelson, in its employ working for it in and about its general business on the day of the accident is shown without substantial dispute, though Kenneth Jensen and Pete Nelson were working on a job building an arch at the private residence of another while the applicant was hauling gravel at another place in no way connected with or related to the work being performed by Kenneth Jensen and Pete Nelson. But we think that does not make any difference, as the work being done by all was in connection with the business of the partnership. With the members of the firm themselves working, ordinarily no more than two additional men were required in carrying on the work. On some occasions, however, more than two additional men were employed for a time. In the previous season of 1929 the applicant and Kenneth Jensen were regularly employed and occasionally an additional man for a time, depending upon the extent and condition of the business. Because of inclemency of the weather, the work in 1929 shut down in November and was not resumed until the following spring. In 1930 the work either in February or March was resumed. Two men, the applicant and Kenneth Jensen, were employed in the work. On March 16,

Kenneth Jensen went to California and entered a veterans' hospital and remained there until April 25, when he returned to Utah. When he left for California Pete Nelson was employed to take his place.

So far as disclosed by the record, no one else was employed except in April when N. P. Mogensen was employed for only two days. When Kenneth Jensen returned he, two or three weeks thereafter, as he testified, again entered the service, which was only a day or two before the accident. So on the day and at the time of the accident ■ the applicant, Kenneth Jensen, and Pete Nelson were all working for the partnership in its business of doing concrete work or work connected therewith, its regular or usual business. J. A. Palle testified that he had not yet "fired" or discharged Pete Nelson, who had taken the place of Kenneth Jensen while the latter was in the hospital. After the applicant was injured and unable to perform labor, Pete Nelson remained and thereafter continued in the service with only two men employed in the business. It was the contention of the commission, and disputed by counsel for J. A. Palle, that a proper construction of the statute is not whether three or more men were "regularly employed" in the business at the time of the accident, but whether three or more men at the time of the accident were employed "in the regular or usual business" of the employer. And to that effect is the finding of the commission, not that on the day of the accident the partnership had three or more men "regularly employed" in the business, but "had three or more men engaged in their regular trade or business." In support thereof, our attention is called to the cases of *Utah Copper Co.* v. *Industrial Commission,* 57 Utah 118, 193 P. 24, 13 A. L. R. 1367, and *Millard County* v. *Industrial Commission,* 62 Utah 46, 217 P. 974. In these cases the question of whether the employer had three or more men in his employ was not involved, for there manifestly the employer had more than three men in his employ. The question there presented was whether the employee who was fatally injured was or was not at the time of his injury

engaged in mere casual work separate and apart from the regular business of the employer. In the first case, the employee at the time of his injury was working on a canal which it was contended was separate and distinct from the regular work or business of the employer. This court held against the contention, and held that the work so performed was part and parcel of the regular work and business of the employer. In the second case, the employee was employed to assist in the capture of an escaped prisoner. It there was claimed that the work for which he was employed was special, or casual, and hence was not regular work or employment of the county. This court again answered the contention by saying that the employment was in the usual course of business of the county and was not casual. The proposition here does not, as it did in the cases just referred to, involve the nature or character of the work at which the employees were engaged. The work here done by the three employees mentioned was in relation to and in connection with the usual or regular business of the employer and was not separate and distinct therefrom. That is not what here divides the parties. The point here is, not whether all of such employees on the day and at the time of the accident were employed or engaged in the "regular business" of the employer, but were they within the meaning of the statute "regularly employed" in such business? Some statutes provide that the employer is within the act "when such employer has at the time of the accident in the common employment" the designated number or more employees. Some, except employees whose employment "is casual and not in the usual course of the trade or business," etc., of the employer. Some include all employees of a designated number or more, "except those whose employment is not in the usual course of trade or business," etc., without indicating whether the employment is or is not casual, regular, or otherwise. Some include all employees regardless of conditions. Other statutes have still other provisions.

So that the question is to be determined from a consideration of the language of the statute. The ordinary and popu-

lar meaning of the word or term "regularly" as used in the statute, that an employer is within the act who "has in service three or more workmen or operatives regularly employed in the same business," etc., when considered in connection with the phrase in which it is used, is not synonymous with "continuous" or "continuously" or "occasionally" and connotes some uniformity in the practice of the employment of three or more workmen in the business and that an occasional increase in the number of workmen less than three for a few days for some unusual occasion would not change the status of the employer; that the term connotes, according to rule, usually, systematically, methodically. *Pooler's Case,* 122 Me. 11, 118 A. 590; *La Croix* v. *Frechette,* 50 R. I. 90, 145 A. 314; *Kelly* v. *Haylock,* 163 Wis. 326, 157 N. W. 1094, L. R. A. 1916E, 626.

But the Legislature here itself defined the term "regularly." It declared that "it means all employments in the usual course of trade, business, profession or occupation of an employer." By the definition it is contended that in determining whether the employer had three or more workmen in his employ, all employees are included who were employed and engaged in the usual or regular business of the employer, regardless of whether they were regularly or only casually or occasionally employed, so long as they on the day and the time of the accident were employed and engaged in the usual or regular business of the employer. There of course is a difference in the popular or ordinary meaning of the phrase three or more men "regularly employed" in the business of the employer, and of language three or more men employed in the regular or usual business of the employer. The first excludes mere casual or occasional employments, in the business, while the other includes all kinds of employments, whether regular, casual, or otherwise in the usual or regular business of the employer. While the term "regular" in its ordinary and popular meaning is the clear antonym of "casual" or "occasional," yet it seems the Legislature declared that the term as used in the statute shall not have that meaning, and that

it was intended to include all employments, regular, casual, or occasional, in the usual trade or business of the employer. In other words, that to bring the employer within the act the number of men employed is to be determined by the character of the work in which they are employed, however brief or long, and not by the character of the employment, whether regular, casual, occasional, periodical or otherwise, so long as they were hired and engaged to do work in the common or usual business of the employer.

Though it be regarded that the Legislature gave rather an enlarged meaning to the term "regularly," still we think it was competent for the Legislature to do so and to declare in what sense it was used. Such conclusion seems also to be supported by subdivision 2 of section 3111 (amended by Laws 1919, c. 63.), which, in defining the term "employee," includes every person (except agricultural laborers and domestic servants) in the service of any employer as defined in section 3110, just referred to, who employs "three or more workmen or operatives regularly employed in the same business," etc., "but not including any person whose employment is but casual and is not in the usual course of trade, business or occupation of his employer." Here again the term "regularly" must be given the meaning as defined in section 3110. By section 3111 the employees (except agricultural laborers and domestic servants) who are excluded are those "whose employment is but casual *and* is not in the usual course of trade, business or occupation of his employer." (Italics added.) That is, to exclude an employee the employment must not only be casual but must also not be in the usual course of the trade or business of the employer. This, as it seems, but emphasizes the fact that a casual or occasional employment in the usual course of the trade or business of the employer does exclude the employee. Had the Legislature in section 3111 used "or" instead of "and," the meaning might well be different. But we are not justified in substituting the one for the other.

Further, the employment of Nelson to take the place of Kenneth Jensen while absent, may not be said to constitute

a mere "casual" employment, but was a regular employment in the business. He continued to be such an employee until he was discharged or left the service. When Kenneth Jensen returned and re-entered the service, so far as anything is made to appear to the contrary, he did so under his prior or under a new employment to regularly and not merely casually continue therein for an indefinite or unstated period.

We thus are of the opinion that the finding of the commission to the extent that the partnership in its usual and regular business on the day and at the time of the injury had three men in its service, rendering itself subject to the provisions of the Compensation Act, is sustained by sufficient evidence and is approved. But for reasons heretofore stated, the order granting the award is annulled and vacated and the cause remanded to the commission with leave to the applicant to apply to the commission for such proper amendments to his application for compensation as he in accordance with the views herein expressed and in the premises may be entitled to.

CHERRY, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.