## No. 17,330.

UNITED MINE WORKERS OF AMERICA ET AL. *v.*
SUNLIGHT COAL COMPANY.
(270 P. [2d] 776)

Decided May 3, 1954.   Rehearing denied May 24, 1954.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK A. WACHOB, Deputy, Mr. PETER L. DYE, Assistant, for plaintiff in error Industrial Commission.

Mr. NEIL S. MINCER, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE STONE delivered the opinion of the court.

UNITED Mine Workers filed complaint before the Industrial Commission, alleging that Sunlight Coal Company discharged certain of its employees because of and to discourage their activities in the Union, contrary to section 6 (1) (c) of the Labor Peace Act. Upon hearing before a Referee, testimony was taken and other evidence produced, whereafter the Referee entered his findings of fact and order sustaining the complaint. The employer, Sunlight Coal Company thereupon filed its petition for review, whereupon the Commission made and entered its findings of fact and order, as follows:

"That during the month of January, 1953, the Complainant, through its agent, Earl Stucker, attempted to organize the miners employed by the Respondent. A meeting of certain of the employees was held in Stucker's room at the Denver Hotel in Glenwood Springs on the 16th of January, 1953. Seven men were present and agreed to attend a Union meeting at New Castle, Colorado, on Sunday, January 18, 1953, for the purpose of joining the local Union. One man, John Miller, presented himself at the meeting. Although the men had agreed to join the Union, they did not actually join until January 20, 1953. On that date Mr. Stucker was advised by telephone that all of the men who had promised to join the Union except one, Shelby Cochrane, had been fired. Mr. Stucker did not get to meet with the employer until February 18, 1953, at which time he met Mr. Earl Rogers, a member of the partnership and one of the owners of the firm. At this meeting Mr. Rogers agreed to meet Mr. Stucker on February 22, but at that time the Company refused to re-employ the men or sign a contract. A subsequent meeting proved fruitless.

"The employees were paid $14.00 per day, six days per week, with straight time and not overtime for addi-

tional hours except Glenn Lindsey, who was paid $15.00 per day.

"The Sunlight Coal Company is a partnership consisting of Earl W. Rogers, Joe Rogers, and Otto W. Schultz. It at that time employed fourteen men upon an hourly basis, or a salary basis. On January 20 Shelby Cochrane and three others contracted with the Company to operate the mine upon a contract basis, all of the terms of the contract not entirely set forth in the testimony. On January 23 the State Coal Mine Inspection Department cancelled the papers of the two Rogers and Shelby Cochrane and since the middle of February the mine had operated under the supervision of Otto Schultz and but three men are employed.

"Prior to January 19, 1953, Mr. Rogers had made the statement that the mine could not operate under the Union restrictions and he would have to shut down, and the Rogers brothers had indicated to the men that they were not in favor of operating with a Union contract.

"On January 20, 1953, Mr. Stucker was advised by Mr. Shelby Cochrane that he, Cochrane, had taken over the mine on contract and that they (Cochrane and associates) did not need a Union and that they would call back the men, who did not need a Union, and get them their jobs back, if they wanted them. None of the men was so re-employed.

"The conclusion that the Sunlight Coal Company attempted to change its method of operation in order to discharge certain of its employees because of their Union activities is inescapable and the Commission so finds.

"No election to name a bargaining unit was held among the employees and District No. 15, United Mine Workers of America has never been certified as a Collective Bargaining Unit for the employees of this Company.

"No Collective Bargaining Unit having been determined by election, the respondent was under no obliga-

tion to bargain with the United Mine Workers or any other organization for a contract.

"The employer, if it were in doubt as to the authority of the United Mine Workers to bargain for its employees, was entitled to insist that a collective bargaining unit election be held and could have, itself, petitioned for such an election. The employer was, likewise, entitled to explain his business situation to the employees and the probable effect upon the operations if the operation cost was increased. This, it did not do, but contented itself by expressing its dislike of the Union and broad statements to the effect that it could not and would not operate under a Union contract.

"The employer, however, had no right under the law to cause the discharge of its employees because of their Union activities.

"The Commission further finds that the following men were discharged on January 19, 1953 on account of Union activities: Albert Blanc, Clement Blanc, Glenn Lindsey, Walter Van Matre, John Miller, Charles W. Tibbetts, contrary to the provisions of Par. 6 (1) (a) and (c) of the Labor Peace Act, the same being Ch. 131, S.L. Colo. 1943.

"The Commission further finds that Albert Blanc and Clement Blanc returned to gainful employment January 26, 1953; Glenn Lindsey and John Miller returned to gainful employment on February 3, 1953; Walter Van Matre returned to gainful employment February 18, 1953, and C. W. Tibbetts found some employment at about that time and should reasonably have returned to gainful employment by February 18, 1953.

"It is, therefore, ordered: That the Sunlight Coal Company, a partnership, and Earl W. Rogers, Joe Rogers and Otto W. Schultz, and each of them, cease and disist at all future times in discriminating against their employees, or any of them, because of Union affiliation or activity.

"It is further ordered: That the respondent, the Sun-

light Coal Company, a partnership, and the individual partners, tender the discharged men above named reinstatement and, if the men so desire, reinstate them in their employment without reduction of wage or loss of seniority.

"It is further ordered: That the Sunlight Coal Company, a partnership, and Earl W. Rogers, Joe Rogers and Otto W. Schultz pay on account of lost wages at the rate of $14.00 per day to Albert Blanc and Clement Blanc for six (6) days each; to John Miller for thirteen (13) days; and to Walter Van Matre and C. W. Tibbetts for twenty-six (26) days each; and to Glenn Lindsey at $15.00 per day for thirteen (13) days, the same being the number of working days lost by these employees on account of the wrongful act of the employer.

"It is further ordered: That the individual partners and each of them, as well as the partnership above named, be and the same are hereby held to be individually liable for the amounts herein ordered to be paid."

Promptly thereafter, the employer filed its complaint in the district court, praying that the order of the Commission be set aside and the complaint of the Union be dismissed. After answer filed, the matter came on for hearing, whereafter the court made and entered its findings and decree, the pertinent parts of which are as follows:

"2. That the Coal Company employer at all times relevant herein conducted a small coal mining operation in Garfield County, Colorado, known as the Sunlight Mine, but did not *regularly* engage the services of eight or more employees as required by the Act. On the contrary, the average employment was no more than 6.7 (6.4) regular employees, although there were in excess of that number employed irregularly. Neither the referee nor the Commission made any findings on this jurisdictional requirement, except that at the time the dispute arose fourteen men were employed. There was no finding of the *regular* employment within the juris-

dictional phase of the Act. In the absence of such a jurisdictional finding and where, as here, the question of jurisdiction has been raised on review, (by argument), the Court is justified in searching the record and to make the appropriate finding, even though in these proceedings the Court is bound by the findings of fact of the Commission.

"3. That the Coal Company employer has since the middle of February, 1953, reduced its operations to such an extent that only three men are employed at the mine and that the Order of the Commission requiring reinstatement of former employees, if confirmed, would compel the employer to operate in a manner that would be contrary to the business judgment of the operators of the enterprise, with a totalitarian result of confiscation, contrary to the intention of the legislature and of the fundamental law of the State of Colorado. The enforcement of such an order would be unconscionable to the Court. Aside from this, the record shows that on January 23, (1953), the State Coal Mine Inspection Department of Colorado cancelled the papers (certifications) of two of the partners and also of one Shelby Cochrane such that under the coal mining laws and regulations of this State only three men can be employed at the mine. If the order for reinstatement of six men were enforced, there would be a violation of our coal mining law. Courts will not require a person to obey one law which in so doing would constitute the violation of another. This should be especially applied where a hazardous occupation, such as coal mining, is involved.

"4. That the defendant Commission was and is without jurisdiction herein; that the hearing before the referee and his order herein, and the Findings of Fact and Order of the Commission on review, were an unwarranted assumption of jurisdiction, and that the Order of the referee and the Findings of Fact and Order of the Commission herein are null and void.

"5. That plaintiff copartnership has not waived nor is

it estopped from asserting lack of jurisdiction herein upon this review.

"It is therefore ordered, adjudged and decreed that the Order of the defendant Industrial Commission of July 29th, 1953, be and the same hereby is set aside and that the proceedings before the Commission are dismissed and held for naught."

The findings and decree of the District Court are here challenged, and we shall consider them in the order in which they appear in the decree.

The first finding therein was that the Commission was without jurisdiction, for the reason that the Sunlight Coal Company did not come within the statutory definition of an employer, which is the necessary basis of jurisdiction of the Commission. Our Labor Peace Act, chapter 97, section 94(2), (2), C.S.A. 1935, as amended by the Session Laws of 1943, defines "employer" as "a person who regularly engages the services of eight or more employees," other than persons exempted by the Act. Since no challenge was raised as to Sunlight Coal Company being an employer under the definition of the Act in the hearing before the Referee or Commission, it is not surprising that the testimony is not detailed on that issue. One of the complainant's witnesses testified that, based on information from the State Inspection Department, he thought the number who were employed on January 16, 1953, was fourteen men. He further testified that there were eight or nine employees who had signified that they wanted United Mine Workers to represent them for collective bargaining; that seven employees attended the Union meeting on January 16, and he named four other employees who were not present at the meeting. One of the employees testified that when he began working on November 17, 1952, there were eight or nine men then working at the mine. One of the partners constituting Sunlight Coal Company testified as follows: "Q. How many persons do you regularly employ at the mine? A. Well, this year we had, in December

and January, fourteen men, but as a rule there has always been under eight men, only for a few days at a time. In the summer time it is probably two." He further testified that their report to the government with respect to their employees showed a yearly average of 6.7, and that on January 19, 1953, "Well, they were all there of the fourteen men we had on the payroll, at that time." Upon being handed a copy of the State Coal Mine Inspection report for the year 1952, the same witness testified that that report showed that their company had an average number of 9.4 men working during the year, but that he and his brother and Mr. Schultz were included in that number; that they were employed in the production of coal but were not hired, and that four men "is about all it takes in the summer time."

Such is the only testimony in the record, other than the annual report to the Governor by the Colorado State Coal Mine Inspection Department for the year 1952, listing the average number of men employed by the Sunlight mine as 9.4.

The statute does not define an employer as one who has an average employment of eight or more employees through the preceding year or as one who has regularly engaged the services of eight or more employees for any specified period of time. The term "regularly engages" is not further defined in the Act. We have not had occasion heretofore to consider the construction of the term and no cases from other jurisdictions have been cited to us by counsel.

In *Fowler v. Baalmann,* 361 Mo. 204, 234 S.W. (2d) 11, construing the provision that a "major employer shall mean an employer who has more than ten employees regularly employed," the court said: "The phrase 'regularly employed' is not defined in the act. And 'regularly,' as used in the statute, 'refers to the question whether the occurrence is or is not in an established mode or plan in the operation of the business, and has no reference to the constancy of the occurrence.' The

word, 'regularly,' is not synonymous with constantly or continuously. *The work may be intermittent and yet regular. Men may be* regularly but not continuously employed.' McDonald v. Seay, 62 Ga. App. 519, 8 S.E. (2d) 796, 797, Norris v. Koenig, (Mo. App.) 183 S.W. (2d) 160."

Similar holding was made in *Employers Liability Assur. Corp. v. Hunter,* 184 Ga. 196, 190 S.E. 598, under the Georgia Act, which is inapplicable to employers having regularly in service less than ten employees. In *Adams v. Ross* (N.Y.), 230 App. Div. 216, where the Act required the employment of four or more men, the court said: "We hold that it is not necessary that four men should be employed during the entire year, but it is sufficient if such employment continues through a reasonably definite period of time, and is not casual." In *Palle v. Industrial Com.,* 79 Utah 47, 7 P. (2d) 284, where the Act was applicable to one having in service three or more workmen regularly employed, the court held that regular employment is used, not synonymous with continuous or occasional, but as cannoting some uniformity in the practice of the employment; that in its ordinary meaning, the term regular is a clear antonym of casual or occasional. In *Mobile Liners, Inc. v. McConnell,* 220 Ala. 562, 126 So. 626, the court quoted from the declaration of the Connecticut State Compensation Commission, construing its workmen's compensation provision of that state, excepting employers "who regularly employ less than sixteen employees in any one business." The Commission said: "The test is, what in the period of time, of reasonable extent, of which that moment forms a part, is the force which was engaged in carrying on the common enterprise." The Alabama court further said, "The word 'regularly,' as used in the statute, refers to the question as to whether the *occurrence is or is not in an established mode or plan in the operation of the business, and has not reference to the constancy of the occurrence."*

In the instant case, we think a similar meaning must be given to the phrase "regularly engages." It is apparent that at the time with which we are here concerned, the employer was engaging the services of eight and more employees; that it had been so engaging that many employees for nearly two months; that the period for which more than eight employees would continue to be engaged was indefinite and depended upon business requirements; that the employment was not casual; that all these employees were regularly engaged in the operation of the business and that the business required that number of men in carrying on its operations during that period. We think the trial court erred in finding that the Commission did not have jurisdiction.

The next finding of the court was that the requirement of the Commission for reinstatement of former employees, if confirmed, would compel the employer to operate in a manner that would be contrary to the business judgment of the operators, with a totalitarian result of confiscation. No such result appears from the record and the business judgment of operators must here, as always, be limited by the applicable requirements of the statutes. The very purpose of the Labor Peace Act is to restrict the business judgment of both operators and employees in the promotion of the welfare of the industry and of the public.

The next finding is that the enforcement of the order for reinstatement of six men would result in a violation of the coal mining law, for the reason that at the time of the hearing only three men could be employed at the mine by virtue of the cancellation of the certifications of two of the partners. Such was not the situation at the time these men were discharged. Such will not be a necessary result of their being paid the amount ordered by the Commission for their wrongful discharge. The order for reinstatement does not necessarily require their continuance for any specified time in future employment. They will return to the same status which

existed at the time of their discharge and subject to termination of their employment upon valid ground not contrary to the provisions of the Labor Peace Act at any time thereafter.

Defendant in error in his brief raises several technical objections as to procedure before the Commission, none of which has merit. Therefore, we shall not consider them.

Careful reading of the record is convincing that there was ample evidence to support the findings of the Commission and its order of payment and reinstatement to the employees wrongfully discharged.

Accordingly, the judgment of the trial court is reversed and the cause remanded with instruction to enter judgment affirming the award of the Commission.

MR. JUSTICE CLARK does not participate.