SAMUEL D'AGOSTINO, PETITIONER-APPELLANT, v. RELIANCE PICTURE FRAME CO., DEFENDANT-RESPONDENT.

Argued May 17, 1954—Decided May 31, 1954.

*Mr. Paul Colvin* argued the cause for appellant.

*Mr. Sidney M. Schreiber* argued the cause for respondent (*Mr. Roger F. Lancaster*, on the brief; *Messrs. Schreiber, Lancaster & Demos*, attorneys).

The opinion of the court was delivered by

HEHER, J. An award of compensation made by the Division of Workmen's Compensation under *R. S.* 34:15–7 *et seq.*, but reversed by the Morris County Court, and the reversal sustained by the Appellate Division of the Superior Court, is here by certification at the instance of the employee.

The ground of the reversal is that the proceeding was not instituted within the time limited by *R. S.* 34:15–51, and the adjudication was abortive for want of jurisdiction.

This is the history:

It seems to be conceded that on June 4, 1948 the employee, in lifting a carton of picture frames for weighing, suffered a left sacroiliac strain with inflammation of back muscles, resulting in his immediate "collapse." He was given medical treatment by Dr. Emanuel Corwin, under the authority of the employer, "almost daily or every other day," until July

23 ensuing, when he was "discharged, improved." But he returned to Dr. Corwin for further treatment of the condition in December 1948, again with the employer's permission, and the employer's contention proceeds on the hypothesis that the statutory period of limitation then began to run. The Employers Mutual Liability Insurance Co. was the insurance carrier at the time.

The employment continued until June 23, 1950, when in lifting a "carton" the employee "felt soreness, a pain, in" his back, followed by "stabbing pains" in "the side" during the night, a condition of such severity that he was still unable to work at the time of the hearing in April, 1951. The New Jersey Manufacturers Casualty Insurance Co. was the insurance carrier at this time. The employee was given medical treatment at the Dover General Hospital, but not under the sanction of the employer or either insurance carrier. The hospital records reveal a diagnosis of osteomyelitis of the first and second lumbar vertebrae. Yet Dr. Heines Wickman, a specialist in orthopedic surgery, found by the use of X-rays a "destructive lesion of the bodies" of these lumbar vertebrae which he diagnosed as "tuberculosis of the spine, Pott's Disease." He found that "in all probability" there is a "causal relation" between the accident of June 4, 1948 and the present condition of disease and disability. He said: "The tubercular lesion has come down from the whole insidious process; I think this more likely originated with the initial injury than with the last episode. I think the last episode no doubt added something to it." This theory of a probable causal relationship is disputed by expert opinion evidence adduced by the employer.

A petition for compensation was filed September 27, 1950, alleging a compensable accident on June 30, 1950, for which June 23, 1950 was substituted by an amendment allowed at a hearing held April 10, 1951. But in response to a question contained in the printed form of petition supplied by the bureau as to whether there are "other facts which you believe important," the petitioner stated: "Petitioner received strain two years ago at plant; was treated by Company Dr. for

one week; was returned to work and put on light job." Service was acknowledged by the New Jersey Manufacturers Casualty Insurance Co., and answer was made by this carrier on behalf of the employer denying that the employee suffered a compensable accident and putting him to his proof.

It was this petition that came on for hearing on April 10, 1951. The employee told of the mishap of June 23, 1950, and the prior accident of June 4, 1948, and he said that the more recent misadventure rendered him incapable of work. It was then that the petition was amended to allege that the later mishap befell him on June 23, 1950, rather than the 30th of that month. The hearing was continued before the completion of the testimony; and on April 11, 1951, a second petition was filed alleging that on or about June 4, 1948, while lifting cartons for shipping, the employee "noticed sharp pain in the back and then collapsed." Service was made upon the Employers Mutual, the insurance carrier at the time, and answer was made consisting of a general denial and the bar of the statute limiting the time to sue.

These two petitions were consolidated for trial, and a hearing followed on July 10, 1951. It appearing that the second petition of April 11, 1951 was interposed more than two years after the last payment of "compensation" in December 1948, the deputy director allowed an amendment of the first petition to aver a compensable injury on June 4, 1948, rather than June 23, 1950, and the second petition alleging an accident on the latter date was dismissed.

There was a finding of a compensable accident on June 4, 1948, and an allowance of compensation on the basis of temporary disability for 53 3/7 weeks, and 20% of total for permanent disability.

The basic contention is that the "cause of action" pleaded arose out of a mishap on June 23, 1950, and none other, and the amendment to include an allegation of the accident of June 4, 1948 introduced a new cause of action barred by the statutory time limitation, citing *Russo v. Wright Aeronautical Corporation*, 1 *N. J.* 417 (1949); *Granahan v. Celanese Corporation of America*, 3 *N. J.* 187 (1949).

But this suggests a misapprehension of the nature of the proceeding and the mode of invoking the statutory remedial process.

The procedure is summary and informal in keeping with the beneficent policy of the act. The proceeding is initiated, *R. S.* 34:15–51, by a verified "petition" within the time limited stating the respective addresses of the petitioner and of the defendant, the "facts relating to employment at the time of injury, the injury in its extent and character, the amount of wages received at the time of injury, the knowledge of the employer or notice of the occurrence of the accident, and such other facts as may be necessary and proper for the information of the bureau," "the matter or matters in dispute and the contention of the petitioner with reference thereto"; and the bureau is directed to "prepare and print forms of petitions," and to assist claimants in the preparation of the petition, when so requested. But, while the action within the time limited by this section of the statute is a jurisdictional *sine qua non*, adherence to the form of the petition provided by the bureau is not.

The Compensation Act embodies a major social policy of placing upon industry the burden of relief to the workman injured by accident in the pursuit of his employment; and society itself also has an interest in the care and welfare of the disabled workman that cannot be set at naught by a want of technical nicety in the statement of the claim. It is requisite only that the substance of the claim in the particulars called for by the statute, including the nature and extent of the injury, so far as known to the petitioner, be set down in simple terms, and that there be the procedural fairness and avoidance of the element of surprise basic to due process. Compare *Sattelberger v. Telep*, 14 *N. J.* 353 (1954). And, if the injury be fairly identified, even though in the most general terms, the amendatory power is invocable to obviate surprise. *Fontaine v. United Engineers and Constructors, Inc.*, 12 *N. J. Misc.* 220 (*Sup. Ct.* 1934), where the contention was that the award was made "on the theory of aggravation * * * not pleaded"; *Cunliffe v. Deslau-*

*riers Column Mould Co.*, 5 *N. J. Misc.* 1037 (*Sup. Ct.* 1927), where an amendment permitted an allegation of injury on alternative dates, involving different insurance carriers; *Elio v. Singer Manufacturing Co.*, 10 *N. J. Misc.* 606 (*Sup. Ct.* 1932). Such is the general rule. To invoke the jurisdiction of the bureau, it is requisite that there be "some sort of initial pleading or document" giving notice to the parties and the bureau of the "material facts." *Palle v. Industrial Commission*, 79 *Utah* 47, 7 *P. 2d* 284, 81 *A. L. R.* 1222 (*Sup. Ct.* 1932).

The form of petition prepared by the bureau was in the nature of a questionnaire designed to elicit all the relevant facts and circumstances bearing upon the petitioner's right to compensation and the nature and extent of the injury to be compensated under the statute; and the original petition of September 27, 1950 in specific terms embraced the injury of June 4, 1948 and the later mishap, whether the latter be an independent injury aggravating the preexisting condition or the development of the prior injury without supervening trauma. By the answer to Question 41 heretofore adverted to, there was adequate notice to the employer and the bureau of the prior accident as a not unlikely primary cause of the injury and disability under which the workman then labored. By that query the history was sought to assess the consequences of compensable trauma. The answer related the two episodes as the basis of the claim for compensation. Such was the object of the inquiry, to effectuate the policy of the law; and it served as suitable notice of the claim sustained by the judgment. The workman could not be expected to know of the precise nature and causes of his physical disability. The subsequent amendment was merely a more specific allegation of causal relation, and so it did not introduce "an entirely new and different cause of action * * * after the statute had tolled the action," within the principle of *Russo v. Wright Aeronautical Corporation*, cited *supra*.

■ It is said that since two insurance carriers were involved, the "procedure violated all sense of fairness and the requirements of due process." But as pointed out in *Cunliffe*

*v. Deslauriers Column Mould Co.*, cited *supra*, "the employee has only to look to the employer for compensation," and his case "ought not to be prejudiced by a change of insurance companies."

And we are of the view that the employee sustained the burden of proof of disability related to the conceded accident of June 4, 1948. Dr. Wickman was not alone in his conclusion of a reasonably probable causal relation between this mishap and the employee's present disability; there was persuasive corroborating professional opinion. The standard of probability is met. The proofs, viewed as a whole, provide the basis of a rational inference to this end, tantamount to legal proof of the fact. *Manziano v. Public Service Gas Co.*, 92 *N. J. L.* 322 (*Sup. Ct.* 1918).

The judgment of the Appellate Division is reversed, and the determination of the bureau is affirmed.

OLIPHANT, J. (dissenting). I would affirm the judgment of the Appellate Division.

On July 10, 1951, when the amendment to the claim petition was allowed the statutory period of two years had expired. The amendment changing the date of the accident from June 23, 1950, to June 4, 1948, introduced an entirely new and different cause of action after the statute had tolled the action. *Russo v. Wright Aeronautical Corporation*, 1 *N. J.* 417 (1949); *Granahan v. Celanese Corporation of America*, 3 *N. J.* 187 (1949). In those cases amendments to the claim petitions were allowed but the amendments were with reference to the nature and extent of the injury. Here the amendment substituted one accident for another, thereby setting up a new and different cause of action for the one alleged.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, BURLING, JACOBS and BRENNAN—5.

*For affirmance*—Justices OLIPHANT and WACHENFELD—2.